Elaine M. GUZIAK, Plaintiff,

v.

John GUZIAK, Defendant.

KRUEGER, THUMS, TLUSTY, HITT-NER & KENNEDY, S.C., and River Valley State Bank, Garnishees,

v.

The UNITED STATES of America, Intervenor.

TREMBATH, HESS & MILLER, S.C., Plaintiff,

v.

John GUZIAK, Defendant.

KRUEGER, THUMS, TLUSTY, HITTNER & KENNEDY, S.C., Garnishee Defendant,

v.

The UNITED STATES of America, Intervenor,

v.

Elaine M. GUZIAK, Impleaded Defendant.

Nos. 84–C–787–S, 84–C–795–S.

United States District Court, W.D. Wisconsin.

Feb. 19, 1985.

Elaine Guziak, pro se.

Richard Bolte, Bradley, Hoover & Brady, Richards & Hessert, Wausau, Wis., for John Guziak.

George Richards, David Albright, Tinkham, Smith, Bliss, Patterson, Wausau, Wis., for Krueger Firm.

Mary Bielefeld, Trial Atty., Tax Div. Dept. of Justice, Washington, D.C., for U.S.

SHABAZ, District Judge.

This action is before the Court on the petition of the United States for removal from the Circuit Court of Marathon County, Wisconsin. The United States invoked the provisions of 26 U.S.C. § 7424 and 28 U.S.C. § 1444 for purposes of jurisdiction which the Court has previously found to be proper. Presently pending are numerous motions for summary judgment. The basic question these consolidated cases present is the priority of claims to a sum of money. The long and tortured history of this case is as follows:

## FACTS

Elaine and John Guziak (hereinafter "Elaine" and "John") had been husband and wife since 1946. Their son, James, who happens to be an attorney in Orange County, California, also has a bit part in this drama, although he is not a party.

On July 1, 1977, the story begins with Elaine's retention of the law firm of Trembath, Hess & Miller ("Trembath") of Wausau, Wisconsin, to represent her in a divorce action in the Circuit Court of Taylor County, Wisconsin. John was living in Little Rock, Arkansas by this time. Elaine was living in the family homestead in Medford, which is in Taylor County. The homestead was apparently encumbered by a mortgage to the Bank of Medford. Elaine was awarded a divorce by judgment entered on September 10, 1979.

The judgment awarded her some property, alimony (actually denominated "maintenance payments" under Wisconsin law) of $1,200.00 per month, and also ordered John to pay certain fees in excess of $60,000.00, which included Elaine's attorney's fees which at that time amounted to $14,746.00.[1] The judgment was amended on June 8, 1982 on remand after an appeal by John which mandated modification of the property settlement. The new judgment provided for payment of Elaine's attorney's fees of $20,000.00 directly enforceable by the law firm against John, with Elaine to be responsible for any balance. The alimony award had been affirmed on appeal.

The judgment on remand was also appealed and was not finally disposed of until

---

1. This amount was not separately stated in the September 1979 judgment. However, the amount was explicitly recognized in the judgment of June 8, 1982, at which time a judgment enforceable against John in the law firm's own name for $20,000 (inclusive of the previous amount) was granted.

February 14, 1984, when the Wisconsin Supreme Court denied a petition for review.

The Trembath firm continued to represent Elaine in the divorce action, at least according to its records, through this second appeal, by which time its claim for attorney's fees reached $46,792.08.[2] No payment has ever been made. The 1982 judgment awarding $20,000.00 in fees was docketed and filed in Marathon County on April 19, 1984.

Meanwhile, the Guziaks, through the intervention of their son, James, were attempting to resolve their divorce-related financial disputes. The impetus for this attempt appears to have been dichotomous. On the one hand, Elaine was having financial problems. In April 1982 she retained the law firm of Krueger, Thums, Tlusty, Hittner & Kennedy ("Krueger"), of Schofield, Wisconsin, to represent her with respect to the Bank of Medford's foreclosure on the homestead. Trembath was having no part of this action, as it hadn't been paid. The Krueger firm would soon become a major supporting player.

On the other hand, John, by the fall of 1983, was very anxious to take part in Wisconsin's Autumn Rite of Passage, also known as deer hunting season. But he was afraid that Elaine would have him arrested for nonsupport if he entered Wisconsin.

Entering from stage west was son, James, who called Bradley Kennedy of the Krueger firm in mid-November 1983 with the news that his parents had worked out a settlement of their differences. According to a letter from Kennedy to John's Wisconsin attorney, Richard Bolte, the settlement provided for the payment of $50,000.00 from John to Elaine; alimony of $500.00 per month commencing November 15, 1983; an agreement by John to indemnify and hold harmless Elaine for state and federal tax liens; and an exchange of quit-claim deeds to various pieces of property as they had been awarded under the divorce decree.

Then things became very strange. While the details were being worked out, John and Elaine came to an agreement whereby John would deposit $30,000.00 with the Krueger firm and $20,000.00 with son James, and Elaine would, in return, not have John arrested during deer hunting season. This agreement was actually reduced to writing, and both Elaine and John signed it. Sometime in November or December, the Krueger firm gave $2,000.00 from the $30,000.00 deposited with it in its trust account to Elaine for living expenses, after first obtaining John's consent.

During the same period, the stipulated settlement discussed above was reduced to writing, but John decided to back out, apparently because of reservations concerning how long he would have to pay the $500.00 per month alimony. This occurrence understandably caused the Krueger firm some concern. Krueger advised Elaine that it found itself in the middle of possibly conflicting claims, and that she ought to get herself another lawyer, which she did. James, being blessed with the same kind of vision, filed an interpleader action in California concerning the $20,000.00 he was holding.

This brings us to the New Year, 1984. On January 19, 1984, Elaine, by her new attorney, filed, of all things, a garnishee complaint against John as defendant and Krueger and the River Valley State Bank of Rothschild, Wisconsin (Krueger's depository, presumably) as garnishees. An answer from the bank was apparently filed, but is not of record here and we will hear no more from it. This action was docketed as case number 84–CV–72 in the Circuit Court of Marathon County, Wisconsin. Elaine's complaint was grounded on a June 1981 Taylor County Circuit Court judgment for her in the amount of $27,170.00, the source of this number being a mystery. Krueger, in answering the complaint, admitted that a judgment had been so entered and alleged that the $28,000 still in its hands was a "sum [which] was paid into said [trust] account by the principal defend-

---

**2.** This amount represents a claim which is disputed, with respect to reasonableness, by Elaine.

ant John Guziak." John answered on March 20, 1984, having been served in Arkansas on February 16, that Krueger had $28,000.00 plus interest "belonging to John Guziak ... in a trust and fiduciary capacity and the garnishment is, therefore, ineffective and improper." He also alleged that the judgment underlying the action was void due to the failure of Elaine to establish personal jurisdiction over him. He also alleged, as an affirmative defense, that the funds were being held "pursuant to negotiations for a stipulated settlement to a marital dispute" and that the funds were being held by Krueger in a fiduciary capacity "who accepted such funds in their capacity as the attorney for Elaine Guziak." Thus, argues the answer, Elaine as plaintiff is trying to garnishee herself, disregarding, of course, the prior allegation that it was John's money. The answer also set up a counterclaim and cross-complaint, alleging that Elaine and Krueger were conspiring to deprive John of the $28,000.00 with knowledge that the judgments were void. (John's money again?) Elaine and Krueger filed general denials in response to the cross-complaint and counterclaim.

Then, on April 24, 1984, Trembath filed a garnishee complaint against John as defendant and Krueger as garnishee for $20,000.00, representing the judgment for attorney fees which it had docketed and filed on April 19, 1984. This action, also filed in the Marathon County Circuit Court, was assigned case number 84–SC–1017. Krueger answered on May 15, admitting that John had paid the sum of $28,000.00 into Krueger's trust account, but stating that the property was no longer under its control as Elaine had filed her action, and also because the account "had been attached by an Internal Revenue Service Notice of Levy served on the Garnishee Defendant [Krueger] on May 8, 1984." This is the first hint of how a federal court comes to be involved in a divorce dispute and related garnishment actions.

John answered this complaint on May 23, 1984, generally denying that the money was subject to garnishment. On July 5, 1984, Trembath filed a reply to Krueger's answer, asserting superiority of its claim to those of both Elaine and the IRS. On June 27, 1984, both garnishment actions were consolidated and assigned to Judge Ronald Keberle.

Things may have proceeded nicely to a reasonable and logical conclusion before Judge Keberle, who is well known for both attributes, but for the entry of a new player. On August 21, 1984, the United States, by the Tax Division of the Department of Justice, moved to intervene. Its complaint in intervention cited several Notices of Tax Lien filed against both Elaine, individually, and John and Elaine jointly, which had been filed at various times between 1980 and 1983 in the counties of Taylor and Sawyer in Wisconsin, and Pulaski in Arkansas. The total of the tax liens, according to the complaint, was $2,067.10 against Elaine, and $151,887.44 against John and Elaine jointly, both including interest and penalties through July 31, 1984. The complaint also alleges that a Notice of Levy was served on Krueger on May 8, 1984.

The motion to intervene was granted by Judge Keberle on September 17, 1984, and the matter was proceeding to a trial on the briefs when the United States petitioned for removal to this Court on October 2, 1984. By this time, Judge Keberle had ordered that Elaine be impleaded as a defendant in 84–SC–1017 on September 28, 1984. Also on September 28, Trembath filed an amended garnishment complaint, alleging the same judgment for attorney's fees against John, and also alleging an attorney's lien for the entire amount of its fees against the fund by virtue of the judgments obtained for Elaine. Also on file are answers to this amended complaint. Krueger had, pursuant to Judge Keberle's order, moved for summary judgment, seeking to establish itself as a mere stakeholder and asking that it be dismissed upon payment of the fund to the Clerk of Court.

This Court has previously denied, with understandable misgivings, a motion by Trembath to remand this matter to the Marathon County Circuit Court, based in

large part on Trembath's view of the perfidy of the tax collector. These cases have been consolidated here as well, this Court's case numbers 84–C–787–S and 84–C–795–S corresponding to the Marathon County Court's 84–CV–72 and 84–SC–1017, respectively.

## MEMORANDUM

The main issue before the Court on the four motions for summary judgment; filed by the United States, the Trembath law firm, the Krueger law firm, and John Guziak; is the priority to the fund held by the Krueger firm between the United States and Trembath. John Guziak essentially supports the claim of the United States.

With the exception of the cross-claim and counterclaim filed by John Guziak against Elaine Guziak and Krueger, it is conceded by all parties that the only interest of the Krueger firm in this case is as a mere stakeholder. It is holding a sum of money deposited by John which is the subject of conflicting claims, none of which Krueger has any interest in defending or supporting. Accordingly, it is proper to dismiss the garnishment claims against Krueger pending the payment of the funds as directed by the Court.

The cross-claim/counterclaim filed by John Guziak against Krueger and Elaine Guziak is grounded on a conspiracy between the two to deprive John of the money he paid into Krueger's trust account. According to the brief filed by John Guziak, the theory of this claim is that Krueger received the funds as a trustee pending a stipulated settlement of the divorce. As will be seen below, the Court fully agrees with that characterization of the fund. The brief goes on, however:

A responsible trustee follows the terms and conditions of his trust, which in this case meant that he would distribute those funds pursuant to the stipulation if it had been worked out and, if not, he would return the funds to the party who deposited the same with his office. A responsible trustee does not have Mrs. Guziak go out and hire another attorney to garnishee him as her first attorney and ask him to breach the terms of the trust under which he obtained the funds, especially when those funds are not even subject to garnishment, as is spelled out hereinabove. Such an act constitutes collaboration and conspiracy and supports the cause of action for the same.

Brief of John Guziak, October 19, 1984, Docket No. 9, 84–C–787–S, page 5–6.

■ The Court finds this argument without any merit whatsoever. The Krueger firm may be faulted for lack of foresight, if not common sense,[3] for putting itself in the position of receiving the funds in trust from John Guziak while its client, Elaine Guziak, had unassailable claims for back alimony against him. But its actions after receiving the funds bespeak of no wrongdoing. Krueger paid out $2,000.00 of the funds only after receiving the consent of John. And, after the conflict of interest in its representation of Elaine and its status as trustee over the funds became apparent with the failure of the settlement, it advised Elaine to obtain other counsel. There is no evidence that Krueger advised Elaine to file a garnishment action, as intimated by the brief, but even if Krueger did so, such an action allowed for a court to determine the right to the funds with notice to John. In other words, the conflicting claims of John and Elaine were apparent, regardless of the other claims which would arise later, and Krueger took the only action possible under the circumstances. If it had given the funds to either John or Elaine, the other would have had more than a colorable

---

**3.** It is, of course, possible that Krueger knew exactly what it was doing. Elaine, its client, was certain (at least as matters stood in November of 1983) to benefit by receipt of the money, either through the settlement or, if that failed, by virtue of having her husband's assets accessible in Wisconsin. At any rate, such shrewdness cannot be attacked afterward, since both John and his attorney participated in the creation of the fund with their eyes open. Whether or not they saw anything is anybody's guess. Perhaps John actually wanted to go deer hunting that badly.

claim for violation of a duty. Accordingly, the cross-claim and counterclaim of John Guziak will be dismissed.

With respect to the issue of priority, the Court recognizes three claimants to the fund at issue here: Trembath, the United States, and, although she has made no motion for summary judgment, Elaine. When the United States is asserting a lien for unpaid taxes, federal law governs the resolution of priorities among competing claims. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). The provisions of the Federal Tax Lien Act, 26 U.S.C. §§ 6321–6326, is the source for deciding such questions, and generally recognizes the notion that "first in time is first in right." *Sgro v. United States*, 609 F.2d 1259 (7th Cir.1979).

A federal tax lien arises and is enforceable upon assessment of the tax and demand for payment, 26 U.S.C. § 6322. This lien has priority over all subsequently filed liens arising under state law except for certain types of liens specified in 26 U.S.C. § 6323. Federal tax liens against John and Elaine jointly, sufficient when coupled with interest and penalties to consume the fund here, were assessed, and demand therefore made, on November 5, 1979.

Elaine's claim appears to be based on an August 1981 judgment[4] in Taylor County and is therefore clearly without priority over that of the federal government. Even if it is a judgment lien specified in § 6323(a), it lacks priority over the tax liens arising from the 1979 assessment since the United States filed notice of these tax liens in accordance with § 6323(f) and Wis.Stats. § 779.97(2), in sufficient amount to cover

this fund in February, 1980, in the counties of residence of both John and Elaine.[5]

■ Thus, it is clear that the government's tax lien is effective against any judgment lien perfected subsequent to February 1980. Assuming that Trembath's claim is based on nothing more than a judgment lien for $20,000.00 created by the August 1982 judgment on remand, its lien is also without priority over the federal lien perfected earlier. However, Trembath appears to be asserting collection of different theories. First, it asserts that it has a prior judgment lien in the amount of $14,-746.00 by virtue of the September 1979 judgment. Second, more importantly, it asserts that the $20,000.00 judgment and the claim for the entire $46,792.08 attorney's fee charged to Elaine are attorney liens accorded superpriority by 26 U.S.C. § 6323(b)(8).

With respect to the $14,746.00 claim from September 1979, this amount, quite simply, was never perfected, at least until it received recognition in the judgment of June 1982. According to Wisconsin law:

A judgment is perfected by the taxation of costs and the insertion of the amount thereof in the judgment.

Wis.Stats., § 806.06(1)(c). Whatever judgment Trembath had with respect to the $14,746.00 claim for fees, that amount was never inserted in a judgment, as far as this record discloses, as early as February 1980, when the federal lien attached and established its priority. Therefore, to the extent that $14,746.00 can be accorded status as a judgment lien, its priority is secondary to the federal tax lien established by the filing of notices in February 1980.[6] At any rate, the affidavit of Dale Miller, the Trembath

---

**4.** This judgment is not of record, but was presumably taken after the remand of the 1979 judgment.

**5.** As Elaine is also indebted to the government for back taxes, a determination of her rights is perhaps unnecessary. However, she is a plaintiff in one of these actions and, while disposal of the fund against which she claims would result in the dismissal of her claim, it is arguable that future proceedings may occur where the question of which claims are being satisfied from

this fund will be important. It is clear that this fund has not, nor, after this decision, will it satisfy any claims by or against her, aside from the $2,000 she actually received.

**6.** Nor is the lien "choate" under federal law as of the September 1979 judgment, because it was unspecific as to amount. *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

attorney who apparently performed the services, discloses a fact which is manifest from the judgment itself: that the judgment of September 1979 was in favor of Elaine for the attorney's fees incurred by her, not in favor of Trembath enforceable in its own name. Trembath did not become the holder of that kind of judgment until July 1982; that is, until after the federal tax lien was filed in accordance with § 6323(f).

■ The attorney lien presents a harder question. Section § 6323(b)(8) states:

(b) Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

\* \* \* \* \* \*

(8) With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement ...

This is one of several "superpriorities" recognized under federal law. *See generally,* Overman, *Federal Tax Liens: A guide to the Priority System of Section 6323 of the Internal Revenue Code,* 16 Boston College Industrial & Commercial Law Review 729 (1975), cited in *Sgro, supra,* 609 F.2d at 1261. According to this commentator,

Where pursuant to local law an attorney is afforded a lien against any fund his efforts create for his client, or where the attorney holds a contract enforceable against such a fund, the attorney is accorded superpriority to the extent of his reasonable compensation.

*Id.* at 756. This lien is known as a superpriority because a tax lien is not valid against it regardless of the prior filing of notices of tax liens. However, the attorney lien must be perfected under state law. *McKee-Berger Mansueto, Inc. v. Board of Education,* 691 F.2d 828, 832 (7th Cir. 1982).

The United States has raised significant questions which are persuasive of the proposition that an attorney's lien has never been perfected (and several other such questions which clearly lack merit). However, it is unnecessary to resolve these questions because Trembath misapprehends the meaning of the statute.

■ It is generally understood that the statutes according priority over federal tax liens are strictly construed against those relying on them. *Anno: Priority of Federal Tax Liens,* 2 L.Ed.2d 1823, 1841 (1957). In the context of § 6323(b)(8), it appears that the statute means to provide priority in favor of the attorney, vis a vis a federal tax lien, against his client's funds which his efforts produced. The record in this case discloses that the funds never belonged to Elaine, Trembath's client, since the settlement was never consummated. Her interest in this fund was contingent, at least until she filed a garnishment complaint, and was never perfected.

■ Similarly, the attorney's lien is effective "with respect to a judgment or other amount in settlement of a claim or cause of action." While this fund was created in contemplation of settlement, it never became one. It is not enough to say that the fund would never have been created but for the judgment obtained in Elaine's favor, as Trembath argues, because the fund never settled the case. Simply stated, this fund is not one against which an attorney lien could attach with priority over a federal tax lien.

It appears that the above resolves all issues in these cases with the exception of the prayer for relief in the complaint in intervention to reduce the claims for taxes to judgment. This matter will be addressed at trial as previously scheduled.

In accordance with the foregoing,

### ORDER

IT IS ORDERED that the garnishment complaints of Elaine Guziak, in 84–C–787–S, and Trembath, Hess & Miller, S.C., in 84–C–795–S, are DISMISSED without prejudice and without costs.

IT IS FURTHER ORDERED that the cross claim and counterclaim of John Guziak in 84–C–787–S is DISMISSED with prejudice and without costs.

IT IS FURTHER ORDERED that Krueger, Thums, Tlusty, Hittner and Kennedy, S.C., pay to the United States that sum of money deposited with it by John Guziak, together with accrued interest thereon, within ten days of entry of final judgment in this action, which is scheduled for trial to the Court on March 6, 1985, commencing at 8:30 A.M.