PRINCE CORPORATION,
Plaintiff-Intervenor-Respondent,

v.

James N. VANDENBERG, Defendant,

VAN DE HEY REAL ESTATE, LLC, Garnishee-
Defendant-Cross-Claimant-Respondent,

Sharon KEMPEN, Sandra Schmit and Mark
Vandenberg,† Intervenors-Cross-Claim
Defendants-Third-Party
Plaintiffs-Appellants,

v.

BMO HARRIS BANK (f/k/a M&I Marshall & Isley)
and State of Wisconsin,
Third-Party Defendants,

Wisconsin DEPARTMENT OF REVENUE,
Third-Party Defendant-Respondent.
[Case No. 2014AP2097]

PRINCE CORPORATION, Plaintiff-Appellant,

v.

James N. VANDENBERG, Defendant,

VAN DE HEY REAL ESTATE, LLC, Garnishee-
Defendant-Cross-Claimant-Respondent,

457

Sharon KEMPEN, Sandra Schmit
and Mark Vandenberg,†
Intervenors-Cross-Claim Defendants-Third-Party
Plaintiffs-Respondents,

v.

BMO HARRIS BANK (f/k/a M&I Marshall & Isley)
and Wisconsin Department of Revenue,
Third-Party Defendants,

STATE of Wisconsin, Third-Party
Defendant-Respondent.
[Case No. 2014AP2295]

Court of Appeals

*Submitted on briefs*
*May 12, 2015.—Decided June 16, 2015.*

2015 WI App 55

(Also reported in 868 N.W.2d 599.)

† Petition for Review granted 9/9/15.

461

On behalf of the plaintiff-appellant, Prince Corporation, the cause was submitted on the briefs of *Douglas W. Rose, Lora L. LoCoco*, and *Ryan L. Kehl* of *Rose & deJong, S.C.*, Milwaukee.

On behalf of the intervenors-cross-claim defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *George Burnett* of *Law Firm of Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the plaintiff-intervenor-respondent, Prince Corporation, the cause was submitted on the brief of *Douglas W. Rose, Lora L. LoCoco*, and *Ryan L. Kehl* of *Rose & deJong, S.C.*, Milwaukee.

On behalf of the intervenors-cross-claim defendants-third-party plaintiffs-respondents, the cause was submitted on the brief of *George Burnett* of *Law Firm of Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the third-party defendant-respondent, Wisconsin Department of Revenue, the cause was submitted on the briefs of *Brad D. Schimel*, attorney general, and *S. Michael Murphy*, assistant attorney general.

Before Stark and Hruz, JJ., and Thomas Cane, Reserve Judge.

¶ 1. STARK, J. James Vandenberg, Sharon Kempen, Sandra Schmit, and Mark Vandenberg owned real property as tenants in common. They entered into a land contract to sell the property to Van De Hey Real Estate, LLC. Thereafter, Prince Corporation, which had previously obtained and docketed a money judgment against James Vandenberg, sought to garnish a portion of the final payment due under the land contract.[1] The circuit court initially granted Prince's request; however, it reconsidered its decision after Kempen, Schmit, and Mark Vandenberg (the Intervenors) intervened in the garnishment action and filed a third-party complaint against the Wisconsin Department of Revenue (DOR), which had two outstanding tax liens against Vandenberg. The court ultimately entered an order permitting the DOR, rather than Prince, to garnish $85,425 of the final land contract payment.

¶ 2. Prince and the Intervenors separately appealed from the order allowing the DOR to garnish the final land contract payment.[2] They both argue the circuit court erred by allowing the DOR to garnish the funds because the DOR never filed a garnishment summons and complaint. In addition, Prince argues the circuit court erred because Prince obtained a first priority lien on the funds by docketing its money judgment and then filing a garnishment action. Prince also argues the circuit court erroneously exercised its discretion by reconsidering its prior decision. The Intervenors argue: (1) the final land contract payment is not subject to garnishment; (2) the garnishable

---

[1] We refer to James Vandenberg as Vandenberg throughout the remainder of this opinion.

[2] We consolidated the appeals on our own motion, by order dated May 7, 2015.

amount, if any, should be limited to one-fourth of the final payment; and (3) the circuit court erred in denying the Intervenors' motion for partition. We reject each of these arguments and affirm the circuit court's order.

## BACKGROUND

¶ 3. Prince obtained a $165,000 judgment against Vandenberg in Brown County on May 6, 2010. The judgment was docketed the same day. Prince made various efforts to collect on the judgment, none of which were successful.

¶ 4. Vandenberg and the Intervenors owned a parcel of property in Brown County as tenants in common, with each owning a one-fourth interest. On July 14, 2011, they entered into a land contract to sell the property to Van De Hey. The total sale price was $341,700, to be paid in three equal installments of $113,900. The first payment was due when the land contract was executed, the second payment was due on October 1, 2011, and the final payment was due on April 15, 2012. The contract provided that, following the final payment, Vandenberg and the Intervenors would deliver to Van De Hey a "Warranty Deed in fee simple of the property, free and clear of all liens and encumbrances[.]"

¶ 5. In October 2011, an attorney contacted Prince and asked it to sign a "Partial Release of Judgment" related to the Brown County property. Prince apparently declined to sign the release and instead filed a nonearnings garnishment action on February 17, 2012, naming Vandenberg as defendant and Van De Hey as garnishee defendant. Prince asserted it was entitled to garnish the entirety of the final land contract payment.

¶ 6. Van De Hey answered Prince's complaint on March 7, 2012, conceding it had possession or control of property belonging to Vandenberg. However, Van De Hey asserted that property was limited to one-fourth of the final land contract payment plus interest, or $28,788.34. In response, Prince filed an "Affidavit of Counsel" asserting the garnishable amount was one-fourth of the entire land contract price, or $85,425. Prince also filed a motion to compel payment.

¶ 7. Thereafter, the Intervenors successfully moved to intervene in the garnishment action. Van De Hey then filed a cross-claim against Vandenberg and the Intervenors for specific performance of the land contract.

¶ 8. On November 6, 2012, the circuit court granted Prince's motion to compel payment. The court reasoned there was "little doubt" Prince had a valid and enforceable lien against Vandenberg that extended "not only to actual real estate owned, but also, proceeds from the sale of any ownership interest." The court further concluded Prince was "entitled to one-fourth of . . . Vandenberg's entire interest in the land sale" and was "not limited to one-fourth of the final land sale payment." Accordingly, the court ordered Van De Hey to remit $85,425 of the final land contract payment to Prince. The November 6 order did not address Van De Hey's cross-claim for specific performance, nor did it state it was a final order for purposes of appeal.

¶ 9. The Intervenors subsequently moved to stay the November 6 order pending appeal. During a January 4, 2013 hearing, the circuit court initially granted the motion to stay, but it then lifted the stay after the parties stipulated the November 6 order was not a final order for purposes of appeal. The court ordered

the parties to mediate their outstanding disputes, but they were unable to reach a settlement.

¶ 10. On November 14, 2013, the Intervenors filed a third-party summons and complaint naming the DOR as a third-party defendant.[3] In its answer to the third-party complaint, the DOR stated it "claim[ed] an interest in the Property" pursuant to three delinquent tax warrants against Vandenberg: two that were docketed on January 4, 2010, in the amounts of $64,719.47 and $47,935.77, and a third that was docketed on August 20, 2012, in the amount of $45,320.67. The DOR requested judgment "in accordance with the foregoing[.]" It is undisputed that the first two tax warrants were docketed before Prince docketed its judgment against Vandenberg and before Prince began garnishment proceedings.

¶ 11. On April 9, 2014, the Intervenors moved for reconsideration of the circuit court's November 6, 2012 order granting Prince's motion to compel payment. They argued: (1) the final land contract payment was not subject to garnishment; (2) the garnishable amount, if any, was limited to twenty-five percent of the final payment; and (3) Prince's garnishment action should be dismissed for failure to name all necessary and proper parties. The Intervenors also requested partition of the Brown County property.

¶ 12. After considering briefs filed by Prince, Van De Hey, and the Intervenors, the circuit court granted

---

[3] BMO Harris Bank (f/k/a M&I Marshall & Ilsley) was also named as a third-party defendant. It appears Vandenberg granted BMO Harris/M&I a mortgage on his interest in the Brown County property, which was recorded in February 2004. The mortgage was apparently satisfied, and none of the parties assert the interests of BMO Harris/M&I are relevant to this appeal.

the Intervenors' motion to reconsider in a written decision and order filed on August 13, 2014. However, the court did not grant the Intervenors the relief they requested. The court explained reconsideration was warranted due to "changes in circumstances" since the November 6, 2012 order—specifically, the fact that the court was now aware the DOR had "perfected liens against Vandenberg's property pursuant to docketed delinquent tax warrants[.]" In light of this new information, the court stated it needed to reconsider "whether Prince [was] entitled to collect [any of the final land contract payment] through this garnishment action[.]" Relying on Wis. Stat. § 71.91(4),[4] the court concluded the two tax warrants docketed on January 4, 2010 were superior to Prince's lien.

¶ 13. The court rejected the Intervenors' arguments that the final land contract payment was not subject to garnishment and that the garnishable amount, if any, was limited to one-fourth of the final payment. Accordingly, the court ordered Van De Hey to pay "the garnishable amount of $85,425" to the DOR. The court denied the Intervenors' request for partition, and it also concluded Van De Hey's claim for specific performance of the land contract was "premature" because the contract had not yet been breached.

## DISCUSSION

¶ 14. On appeal, Prince and the Intervenors raise various arguments regarding the circuit court's August 13, 2014 order, all of which we reject. First, contrary to the Intervenors' assertion, we conclude the final land contract payment is subject to garnishment.

---

[4] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

Second, we reject the Intervenors' argument that the garnishable amount, if any, is limited to one-fourth of the final payment. Third, we conclude the DOR's tax liens are superior to Prince's lien on the final payment. Fourth, we reject the argument, advanced by both Prince and the Intervenors, that the DOR is not entitled to garnish any portion of the final payment because it never filed a garnishment summons and complaint. Fifth, we conclude the circuit court did not erroneously exercise its discretion by reconsidering its November 6, 2012 order. Finally, we reject the Intervenors' argument that the court erred by denying their request for partition.

## I. The final land contract payment is subject to garnishment.

██

¶ 15. The Intervenors do not dispute, as a general matter, that payments due under a land contract are subject to garnishment. *See* Wis. Stat. § 812.18(1) ("[T]he garnishee shall be liable to the creditor for the property then in the garnishee's possession or under his or her control belonging to the debtor or in which the debtor is interested to the extent of his or her right or interest therein[.]"). However, the Intervenors cite a number of cases for the proposition that "a garnishee who owes money jointly to the judgment debtor and one or more others is not subject to garnishment by creditors of the judgment debtor alone." The Intervenors contend that, under the land contract, Van De Hey owes money jointly to Vandenberg and the Intervenors. Accordingly, the Intervenors argue nei-

ther Prince nor the DOR may garnish the final land contract payment in order to satisfy debts owed solely by Vandenberg.

¶ 16. The flaw in this argument is that Van De Hey does not owe money jointly to Vandenberg and the Intervenors under the land contract.[5] Vandenberg and the Intervenors own the Brown County property as tenants in common, with each owning a one-fourth interest. Pursuant to Wis. Stat. § 700.21(1), "[i]f 2 or more persons are named as covendors in a contract to transfer an interest in property which they own as tenants in common, the purchase price is payable to them according to their interests, unless the contract expresses a contrary intent." Here, the land contract simply states:

> Purchaser agrees to purchase the property and to pay to Vendor at such place as Vendor directs, the sum of $341,700.00 in the following manner: (a) $113,900.00 at the execution of this contract; (b) an additional $113,900.00 due on October 1, 2011; and (c) the balance of $113,900.00 due on April 15, 2012, together with interest from date hereof on the balance outstanding from time to time at the rate of 2 percent per annum.

Because the land contract does not express any contrary intent, the presumption set forth in § 700.21(1) applies, and the purchase price is payable to Vandenberg and the Intervenors according to their interests in the Brown County property. Vandenberg

[5] Interpretation of a contract presents a question of law that we review independently. *Osborn v. Dennison*, 2009 WI 72, ¶ 33, 318 Wis. 2d 716, 768 N.W.2d 20. Interpretation and application of statutes are also questions of law for our independent review. *State v. Seigel*, 163 Wis. 2d 871, 885, 472 N.W.2d 584 (Ct. App. 1991).

owns a one-fourth interest in the property, so he is entitled to one-fourth of the contract price. Accordingly, one-fourth of the contract price is garnishable in order to satisfy debts owed by Vandenberg alone.[6]

¶ 17. In their reply brief, the Intervenors argue the land contract *does* express an intent that payments be made in a manner other than according to the payees' respective interests. They note that the land contract uses the singular term "Vendor" to refer to Vandenberg and the Intervenors, which they claim indicates an intent that the contract price be paid jointly. They also claim the contract gives the "Vendor" certain rights that make no sense unless the payments are joint:

> For example, if Van De Hey defaults on a payment, the Vendor has the right to terminate the land contract, have Van De Hey ejected from the Property, and sue to recover "full payment of the entire outstanding balance." This provision presupposes unified payments. If the payments were subdivided amongst [Vandenberg] and the Intervenors, and Van De Hey paid the Intervenors but not [Vandenberg], could [Vandenberg] alone terminate the land contract, eject Van De Hey from the Property, and collect the entire outstanding balance under the land contract? It is difficult to see how that would work.

(Record citation omitted.)

---

[6] The cases cited by the Intervenors are distinguishable because they involve parties with joint interests in property, rather than tenants in common. *See, e.g., Nitka v. Nitka,* 208 Wis. 181, 242 N.W. 504 (1932); *Badger Lumber Co. v. Stern,* 123 Wis. 618, 101 N.W. 1093 (1905). Accordingly, we do not discuss these cases further.

¶ 18. We are not persuaded by the Intervenors' argument. Neither the land contract's use of the singular term "Vendor" nor the rights granted to the "Vendor" under the contract demonstrate that the parties intended the purchase price to be payable in any manner other than according to the payees' respective interests. Our interpretation of the land contract does not, as the Intervenors suggest, presuppose a subdivision of each payment between the four payees. Nothing in the contract specifies that each payment is to be divided in fourths. Van De Hey is not required to remit one-fourth of each payment to each payee. Instead, he is required to remit each payment to the covendors, and, pursuant to Wis. Stat. § 700.21(1), each covendor has a one-fourth interest in the amount due. Under these circumstances, we agree with Prince, the DOR, and the circuit court that the final land contract payment is garnishable.

## II. The garnishable amount is one-fourth of the total contract price.

¶ 19. The Intervenors next argue that, even if the final land contract payment is subject to garnishment, the garnishable amount is limited to one-fourth of the final payment. They observe that Wis. Stat. § 812.01(1) allows a creditor to garnish property "in [the garnishee's] possession or under his or her control belonging to such creditor's debtor[.]" They argue the property in Van De Hey's possession that belongs to Vandenberg is limited to one-fourth of the final land contract payment, or $28,475. They essentially assert the circuit court employed an inconsistent analysis by treating the land contract payments as divisible for

purposes of concluding the final payment is garnishable, but then treating the payments as indivisible for purposes of calculating the garnishable amount.

¶ 20. We conclude, as a matter of law, that the circuit court correctly interpreted the land contract and properly applied Wis. Stat. § 700.21(1). Under the plain language of the land contract, the full contract price is payable to all four covendors. However, by operation of § 700.21(1), the contract price is divided between the covendors according to their respective interests in the Brown County property. Contrary to the Intervenors' assertion, the individual payments are not subdivided; only the full contract price is subdivided. Under § 700.21(1), Vandenberg has a property right to one-fourth of the full contract price, or $85,425. Accordingly, that is the garnishable amount.

¶ 21. In their third-party complaint, the Intervenors alleged that the first two payments under the land contract were "distributed three-quarters to [the Intervenors,] and one-quarter was applied to the liens filed against Vandenberg on his one-fourth interest in the property"—specifically, to a BMO Harris/M&I Bank mortgage recorded in February 2004. The Intervenors therefore contend a portion of Vandenberg's $85,425 share of the contract price has already been distributed. However, what Vandenberg and the Intervenors may have done with the previous payments is irrelevant and has no impact on the rights of Prince or the DOR to garnish Vandenberg's interest in the amount due under the land contract. We look to the contract language, and Wis. Stat. § 700.21(1), to determine the garnishable amount. Under the contract and statute, Vandenberg's right is to receive one-fourth of the contract proceeds. Consequently, that is the amount subject to garnishment.

### III. The DOR's tax liens take priority over Prince's lien.

■

¶ 22. We now turn to Prince's argument that it, rather than the DOR, was entitled to garnish the final land contract payment because it had a first priority lien on Vandenberg's personal property. The effect of a lien against third parties is a question of law that we review independently. *Associated Bank N.A. v. Collier*, 2014 WI 62, ¶ 21, 355 Wis. 2d 343, 852 N.W.2d 443.

¶ 23. Prince relies heavily on *Collier* in support of its argument that its lien on the final land contract payment took priority over the DOR's liens. *Collier* involved "the collection efforts of two judgment creditors of defendant Jack Collier, SB1 Waukesha County, LLC and Decade Properties, Inc." *Id.*, ¶ 1. SB1 had purchased a docketed money judgment against Collier from Associated Bank. *Id.*, ¶ 6. After purchasing the judgment, SB1 obtained an order for Collier to appear at supplemental proceedings. *Id.* However, SB1 was unable to serve the order on Collier prior to its expiration. *Id.*

¶ 24. Shortly after SB1 obtained the order for Collier to appear, Decade sued Collier and obtained a judgment against him. *Id.*, ¶¶ 7–8. Decade attempted to docket the judgment on October 26, 2010; however, due to an error, the clerk did not enter the judgment in the judgment and lien docket until June 29, 2011. *Id.*, ¶ 8. On November 16, 2010, Decade served Collier with an order to appear for supplemental proceedings, which were conducted on November 22, 2010. *Id.*, ¶ 9. Decade did not take any additional steps to seize any of Collier's personal property in order to satisfy its judgment. *Id.*

¶ 25. SB1 subsequently obtained a second order for Collier to appear for supplemental proceedings, which was served on Collier on April 2, 2011. *Id.*, ¶¶ 10–11. Collier failed to appear at the supplemental proceedings and was found in contempt. *Id.*, ¶¶ 11–12. On July 29, 2011, SB1 moved for court approval of the sale of Collier's personal property located in Brookfield, Wisconsin. *Id.*, ¶ 13. Decade intervened and opposed SB1's motion. *Id.*, ¶ 14. Decade argued it had a first priority lien over Collier's personal property because it was the first creditor to serve Collier with an order to appear at supplemental proceedings. *Id.* SB1 responded that Decade did not have a lien on Collier's personal property because its judgment had not yet been docketed when it served the order to appear. *Id.*, ¶ 15.

¶ 26. On appeal, our supreme court held in favor of SB1. The court observed that "[b]y entering a judgment in the judgment and lien docket, a judgment creditor obtains a ten-year statutory lien on real property of the debtor located in the county in which the judgment was docketed." *Id.*, ¶ 23 (citing Wis. Stat. § 806.15(1) (2011–12)). Conversely, the act of docketing a judgment "does not create a statutory lien on the debtor's personal property." *Id.* "Instead, a judgment creditor obtains an unsecured, inchoate interest with regard to the debtor's personal property, tangible and intangible, against which to levy." *Id.* Consequently, merely serving the judgment debtor with an order to appear for supplemental proceedings is insufficient to create a blanket lien on all of the debtor's personal property that is superior to the interests of other judgment creditors. *Id.*, ¶ 59. Rather,

476

[a] judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property. Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver.

*Id.* (citations omitted).

█

¶ 27. Here, it is undisputed that Prince docketed a money judgment against Vandenberg on May 6, 2010. It is also undisputed that Prince identified specific personal property belonging to Vandenberg—the final land contract payment—and levied that property by serving a nonearnings garnishment summons and complaint on Van De Hey on February 25, 2012. Prince therefore asserts it fulfilled each requirement listed in *Collier*, and, consequently, it has an "equitable lien on Vandenberg's personal property in Van De Hey's possession—the final land contract payment." Prince further asserts that, under *Collier*, its lien is superior to the DOR's tax liens.

¶ 28. We agree with Prince that it fulfilled the requirements set forth in *Collier* to obtain a lien on the final land contract payment. However, we reject Prince's argument that its lien is superior to the DOR's liens. The priority analysis in *Collier* involved a dispute between two judgment creditors. Here, the dispute is between Prince, a judgment creditor, and the

DOR, a tax warrant holder. Accordingly, the priority analysis in this case is governed by Wis. Stat. § 71.91(4), not *Collier*.

¶ 29. Wisconsin Stat. § 71.91(4) provides, in relevant part:

> Unpaid tax is perfected lien on property. If any person liable to pay any income or franchise tax neglects, fails, or refuses to pay the tax, the amount, including any interest, addition to tax, penalty, or costs, shall be a perfected lien in favor of the department of revenue upon all property and rights to property. The lien is effective at the time taxes are due or at the time an assessment is made and shall continue until the liability for the amount to be paid or for the amount so assessed is satisfied .... The perfected lien does not give the department of revenue priority over lienholders, mortgagees, purchasers for value, judgment creditors, and pledges whose interests have been recorded before the department's lien is recorded.

Under § 71.91(4), a person's failure to pay income or franchise taxes creates a perfected lien in favor of the DOR on "all property" of the debtor. The statute specifies that the perfected lien does not give the DOR priority over other lienholders and judgment creditors whose interests were recorded before the DOR's lien. By implication, then, the DOR's perfected lien is superior to any interest recorded *after* the DOR's lien. *See also* Wis. Stat. § 409.322(1)(a) (providing that, under general secured transaction law, "[c]onflicting perfected security interests . . . rank according to priority in time of filing or perfection"). In this case, the DOR docketed two tax warrants on January 4, 2010, before Prince obtained and docketed its judgment against Vandenberg, and before Prince began garnishment proceedings. Accordingly, pursuant to § 71.91(4), the

478

DOR has a perfected lien on all of Vandenberg's property, including the final land contract payment, which takes priority over Prince's subsequently created lien.

¶ 30. Prince argues WIS. STAT. § 71.91(4) is inapplicable because there is no evidence in the record that the DOR's tax warrants pertained to income or franchise taxes. However, the circuit court took judicial notice of CCAP[7] records regarding the tax warrants. The court stated these records "establish[ed] that the taxes owed by Vandenberg were income taxes." Prince does not argue on appeal that the court improperly took judicial notice of the CCAP records. We therefore reject Prince's argument that § 71.91(4) is inapplicable.[8]

¶ 31. Prince next argues the circuit court erred by relying on real estate lien priority principles. However, Prince is mistaken. The circuit court's conclusion that the DOR's tax liens were superior to Prince's lien was based solely on WIS. STAT. § 71.91(4). The court did not rely on real estate lien priority principles, and neither do we.

¶ 32. Prince also suggests that its claim to the final land contact payment is necessarily superior to the DOR's claim because Prince was the only party to actually file a garnishment action. Prince observes

[7] *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶ 5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 ("CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs. The online website reflects information entered by court staff.").

[8] In response to Prince's argument that WIS. STAT. § 71.91(4) is inapplicable, the DOR filed a motion asking this court to take judicial notice of the CCAP records regarding the tax warrants. We need not do so because the circuit court already took judicial notice of the CCAP records, and Prince does not argue on appeal that the court erred in that regard.

that WIS. STAT. § 812.01(1) allows "[a]ny creditor" to garnish property belonging to the creditor's debtor that is in the possession of a third party. Prince contends the statute's use of the term "any" "demonstrates that even subordinate creditors may garnish, if they are the first to do so." Prince also notes that the garnishment statutes do not include any provisions regarding priority. Prince asserts this further shows that garnishment priority is determined on a first-to-file basis.

¶ 33. Prince's arguments ignore the longstanding principle that a plaintiff in a garnishment action has no right to receive any property from the garnishee until superior liens are satisfied. *See Liberty v. Liberty*, 226 Wis. 136, 140, 276 N.W. 121 (1937) ("As rights under the garnishment are subordinate to a valid pre-existing lien, the only judgment which could be entered in favor of [the garnishor] would be for the balance, if any existed, over the amount of the [pre-existing] lien."). Thus, the mere fact that Prince was the first party to file a garnishment action is not dispositive of priority.

¶ 34. Moreover, our conclusion that the DOR's perfected tax liens take priority in this case is consistent with the treatment of federal tax liens vis-à-vis garnishment proceedings. Like state tax liens under WIS. STAT. § 71.91(4), federal tax liens arise and are enforceable upon assessment of the tax. *See* 26 U.S.C. § 6322. Federal tax liens have priority "over all subsequently filed liens arising under state law, except for certain types of liens specified in 26 U.S.C. § 6323." *Guziak v. Guziak*, 609 F. Supp. 65, 70 (W.D. Wis. 1985). Accordingly, "[w]hen federal tax liens are recorded before judgment is obtained in a garnishment action,

those liens have priority over the equitable lien obtained upon the filing of the garnishment action." *Wisconsin v. Bar Coat Blacktop, Inc.*, 640 F. Supp. 407, 415 (W.D. Wis. 1986).

¶ 35. In *Guziak*, two parties commenced garnishment actions against a judgment debtor. *Guziak*, 609 F. Supp. at 67–68. Both garnishments were based on judgments that were docketed after a federal tax lien arose. *Id.* at 70. The federal taxing authority moved to intervene in the garnishment actions to protect its position. *Id.* at 68. The court held the federal tax lien was superior because it arose before the judgment liens were perfected. *Id.* at 70. Consequently, the court ordered the garnishable funds to be paid to the taxing authority. *Id.* at 72.[9] Similarly, in this case, the DOR's tax liens take priority over the equitable lien created by Prince's garnishment action because the tax liens arose first.

## IV. The DOR is entitled to garnish the final land contract payment.

¶ 36. Prince and the Intervenors also argue the DOR is not entitled to garnish the final land contract payment because the DOR never filed a garnishment

---

[9] Prince argues *Guziak v. Guziak*, 609 F. Supp. 65 (W.D. Wis. 1985), and *Wisconsin v. Bar Coat Blacktop, Inc.*, 640 F. Supp. 407 (W.D. Wis. 1986), are distinguishable because, in both cases, the federal taxing authority actually levied against the property subject to garnishment. However, the holdings in those cases were not based on the fact that the taxing authority levied against the property; they were based on the fact that the tax liens arose prior to other liens. The fact that the taxing authority pursued collection by levying had no bearing on the courts' analyses.

summons and complaint. They observe that WIS. STAT. ch. 812 anticipates commencement of garnishment actions by the filing of a summons and complaint. *See* WIS. STAT. §§ 812.04, 812.07. They further observe that garnishment is a purely statutory remedy, and, as such, strict compliance with the garnishment statutes is required. *See Liberty Loan Corp. & Affiliates v. Eis,* 69 Wis. 2d 642, 646–47, 230 N.W.2d 617 (1975).

¶ 37. We are not persuaded by Prince and the Intervenors' argument that the DOR was required to file a garnishment summons and complaint in order to assert its interest in the final land contract payment. Instead, we conclude the DOR appropriately asserted its interest in the final payment in its answer to the Intervenors' third-party complaint. This procedure is contemplated by WIS. STAT. § 812.17, which allows a third party claiming an interest in property in the garnishee's possession to be impleaded in the garnishment action.[10] Following impleader, the statute requires the third-party claimant to file an answer setting forth its claim to the property. *Id.* That is

[10] WISCONSIN STAT. § 812.17 provides, in full:

When the answer of the garnishee discloses that any 3rd person claims the debt or property in the garnishee's hands and the name and residence of such claimant the court may order that such claimant be impleaded as a defendant in the garnishment action and that notice thereof, setting forth the facts, with a copy of such order and answer be served upon the 3rd-person claimant, and that after such service is made the garnishee may pay or deliver to the officer or the clerk such debt or property and have a receipt therefor, which shall be a complete discharge from all liability for the amount so paid or property so delivered. Such notice shall be served as required for service of a summons. Upon such service being made such claimant shall be deemed a defendant in the garnishee action, and within 20 days shall answer setting forth the claimant's claim or any defense that the garnishee might have made.

precisely what happened in this case. After the DOR was made a party to the garnishment action by virtue of the Intervenors' third-party complaint, the DOR filed an answer asserting it claimed an interest in Vandenberg's property pursuant to delinquent tax warrants. The DOR identified the tax warrants by number, date of docketing, and amount due. The DOR then requested judgment "in accordance with the foregoing[.]" Although not particularly detailed, we conclude this answer was sufficient, under Wisconsin's notice pleading rules, to assert the DOR's claim to the final land contract payment.

¶ 38. Prince and the Intervenors argue Wis. Stat. § 812.17 is limited to situations in which the garnishee's answer discloses a third party's claim to property in the garnishee's possession. Because that is not the case here, Prince and the Intervenors contend § 812.17 does not apply. However, regardless of how or when the DOR's interest in the final land contract payment came to light, the fact is that the DOR *was* impleaded in the garnishment action. Neither Prince nor the Intervenors argued in the circuit court that the impleader was improper. After it was made a party, the DOR answered the Intervenors' third-party complaint and asserted a claim to the final land contract payment. Doing so was sufficient to preserve the DOR's claim, and the DOR was not required to file a garnishment summons and complaint.[11]

---

[11] In addition to arguing the DOR was required to file a garnishment summons and complaint, the Intervenors also argue the DOR was required to satisfy its tax liens by foreclosing on the real property itself, rather than by garnishing the final land contract payment. There is no legal basis for this argument. Under Wis. Stat. § 71.91(4), the DOR had perfected liens against all of Vandenberg's property—both real and

## V. The circuit court properly exercised its discretion by reconsidering its November 6, 2012 order.

¶ 39. Prince next argues the circuit court erred by reconsidering its November 6, 2012 order. We review a circuit court's decision on a motion for reconsideration under the erroneous exercise of discretion standard.[12] *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell' s Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶ 6, 275 Wis. 2d 397, 685 N.W.2d 853. A circuit court properly exercises its discretion when it examines the relevant facts, applies the correct legal standard, and employs a demonstrated rational process to reach a reasonable conclusion. *See Borreson v. Yunto*, 2006 WI App 63, ¶ 6, 292 Wis. 2d 231, 713 N.W.2d 656. A motion for reconsideration may not be based on mere "umbrage with the court's ruling" but must be based on either newly discovered evidence or a manifest error of law or fact. *Koepsell's*, 275 Wis. 2d 397, ¶ 44.

¶ 40. Prince argues the circuit court erroneously exercised its discretion by granting the Intervenors' motion for reconsideration because the November 6, 2012 order was "based on all the relevant facts avail-

personal. It could therefore choose whether to foreclose on the real property or pursue garnishment of the final land contract payment, as it saw fit.

[12] Both Prince and the DOR use the term "abuse of discretion." Our supreme court changed the terminology used when reviewing discretionary decisions from "abuse of discretion" to "erroneous exercise of discretion" in 1992. *See State v. Plymesser*, 172 Wis. 2d 583, 585 n.1, 493 N.W.2d 367 (1992).

able at the time and follows a correct theory of law[.]" (Some capitalization omitted.) Specifically, Prince argues the court "had all the relevant information necessary" to make a decision at the time of the November 6 order because "the existence of other liens on the Subject Property has no bearing on Prince's garnishment action." We disagree. After the court entered the November 6 order, the DOR was added as a party to the case. The DOR's answer to the third-party complaint revealed that the DOR had a claim to the final land contract payment. Based on the information provided in the DOR's answer, the circuit court properly determined the DOR's tax liens were superior to Prince's lien. The court therefore appropriately exercised its discretion by determining that "changes in circumstances"—or, under the terminology used in *Koepsell's*, newly discovered evidence—warranted reconsideration of the November 6 order.

¶ 41. Prince also argues the circuit court erroneously exercised its discretion by reconsidering the November 6 order because the Intervenors' motion for reconsideration was untimely. Prince asserts that, after the November 6 order was entered, the Intervenors' only recourse was to appeal within ninety days, pursuant to WIS. STAT. § 808.04(1), or file a motion for reconsideration within twenty days, pursuant to WIS. STAT. § 805.17(3). The Intervenors did not appeal from the November 6 order, and their motion for reconsideration was filed over a year after the order was entered.

¶ 42. We reject Prince's timeliness argument for three reasons. First, although Prince suggests the Intervenors were required to appeal from the

485

November 6 order, that order was not a final order for purposes of appeal. Whether an order is final is a question of law subject to independent review. *State v. Williams*, 2005 WI App 221, ¶ 12, 287 Wis. 2d 748, 706 N.W.2d 355. To be considered a final order for purposes of appeal, a document must "(1) be entered by the circuit court, (2) dispose of the entire matter in litigation as to one or more parties, and (3) state on its face that it is the final document for purposes of appeal." *Werner v. Hendree*, 2011 WI 10, ¶ 62, 331 Wis. 2d 511, 795 N.W.2d 423 (2010). Here, the parties stipulated during the January 4, 2013 hearing that the November 6 order was not final because several issues still needed to be briefed. The court ordered the parties to mediate their outstanding disputes. In addition, the November 6 order did not resolve Van De Hey's cross-claim against Vandenberg and the Intervenors for specific performance of the land contract. Moreover, the November 6 order did not state it was final for purposes of appeal. On these facts, we agree with the circuit court that the November 6 order was not final.

¶ 43. Second, while Prince argues on appeal that the Intervenors' motion for reconsideration was untimely under Wis. Stat. § 805.17(3), Prince did not raise that argument in the circuit court. Instead, it simply argued the Intervenors were required to appeal from the November 6 order. Prince has therefore forfeited its right to raise any argument on appeal that the reconsideration motion was untimely under § 805.17(3). *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997) (arguments raised for the first time on appeal are generally deemed forfeited).

¶ 44. Third, even if Prince had not forfeited its argument regarding WIS. STAT. § 805.17(3), the DOR argues that statute only applies to judgments entered following trials to the court. Because no trial to the court was held in this case, the DOR argues the twenty-day time limit in § 805.17(3) is inapplicable. The DOR contends the circuit court's order granting reconsideration should instead be analyzed as an order granting a motion for relief from judgment under WIS. STAT. § 806.07(1)(g) or (h), which motions need only be filed "within a reasonable time[.]" Sec. 806.07(2). Prince does not respond to the DOR's argument, and we therefore deem it conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶ 45. Prince also argues the circuit court erroneously exercised its discretion because its decision to grant reconsideration was based on information that was not properly before the court. Prince contends the information about the DOR's tax warrants only came to light because the circuit court improperly allowed the Intervenors to implead the DOR. Prince asserts the impleader was improper under WIS. STAT. § 803.05(1) because the Intervenors' third-party summons and complaint were not filed within six months of the garnishment summons and complaint or with leave of the court. Prince also argues the impleader was improper under WIS. STAT. § 812.17 because the DOR's claim to the final land contract payment was not disclosed in the garnishee's answer. However, Prince failed to raise these arguments in the circuit court. Consequently, it has forfeited its right to raise them on appeal. *See Van Camp*, 213 Wis. 2d at 144.

## VI. The circuit court did not err by denying the Intervenors' request for partition.

██ ██

¶ 46. Finally, the Intervenors argue the circuit court erred by denying their request for partition. "In Wisconsin[,] partition is a remedy under both the statutes and common law." *Watts v. Watts*, 137 Wis. 2d 506, 535, 405 N.W.2d 303 (1987). WISCONSIN STAT. § 842.02, which represents a codification of the common law of partition, *Klawitter v. Klawitter*, 2001 WI App 16, ¶ 7, 240 Wis. 2d 685, 623 N.W.2d 169 (2000), provides that "[a] person having an interest in real property jointly or in common with others may sue for judgment partitioning such interest unless an action for partition is prohibited elsewhere in the statutes or by agreement between the parties for a period not to exceed 30 years." Sec. 842.02(1). "Partition, although now codified in our statutes, is an equitable action." *Klawitter*, 240 Wis. 2d 685, ¶ 7. When reviewing a decision in equity, we apply the erroneous exercise of discretion standard of review. *Id.*, ¶ 8.

¶ 47. WISCONSIN STAT. ch. 842 sets forth two remedies that are available in a partition action—partition of the actual property, or, if partition is impossible, judicial sale of the property and division of the proceeds. *See* WIS. STAT. § 842.02(2); *Schmit v. Klumpyan*, 2003 WI App 107, ¶ 22, 264 Wis. 2d 414, 663 N.W.2d 331. The circuit court appropriately determined neither of those remedies would be suitable in this case.

██

¶ 48. First, the circuit court appropriately recognized that partition of the Brown County property itself would result in prejudice to Van De Hey. Under the land contract, Vandenberg and the Intervenors

agreed to provide Van De Hey title to the entire piece of property, free of liens and encumbrances. Partitioning the property would result in the Intervenors receiving three-quarters of the property, free of liens and encumbrances, and Vandenberg receiving one-quarter, subject to various liens. Both the Intervenors and Vandenberg could then convey their interests to Van De Hey, but that would not comply with the land contract because Van De Hey would not receive clear title to the entire property. Alternatively, Vandenberg could retain his share and Van De Hey could receive three-quarters of the property lien-free. However, that outcome would also prejudice Van De Hey because he would be paying the full contract price for only three-quarters of the property.

¶ 49. The circuit court also appropriately determined a judicial sale would prejudice Van De Hey. Judicial sale of the property would be accomplished by a public sale at auction. *See* WIS. STAT. § 842.17(1). However, Van De Hey has already paid $227,800 for the property, pursuant to the land contract. The Intervenors do not explain how these payments would be treated in the event of a judicial sale.

¶ 50. As the Intervenors observe, in addition to the remedies listed in WIS. STAT. ch. 842, a court in a partition action has discretion "to order any remedy, including a private sale by the parties, that is equitable." *Schmit*, 264 Wis. 2d 414, ¶ 22. Here, the Intervenors argue the circuit court should have "order[ed] a sale that track[ed] the terms and conditions of" the land contract. Specifically, they contend the court should have "ordered the final payment under the land contract made by Van De Hey, [Vandenberg's] share of the net proceeds distributed to the DOR, as

489

senior lienholder, the liens foreclosed, and title transferred to Van De Hey free and clear of all liens and encumbrances." However, this procedure would clearly prejudice the lienholders, including Prince, by terminating the security for Vandenberg's debts. Accordingly, the circuit court could properly determine the Intervenors' proposed remedy was inequitable.

¶ 51. The Intervenors note it is undisputed that Vandenberg's one-fourth share of the Brown County property is encumbered by over $400,000 in liens, which exceeds the contract price for the entire property. They therefore argue partition is the only way the contract vendors can provide Van De Hey with clear title to the property, in accordance with the terms of the land contract. That is incorrect. The vendors can also provide a lien-free property by obtaining releases of the liens. Under these circumstances, the circuit court did not erroneously exercise its discretion by denying the Intervenors' request for partition.

*By the Court.*—Order affirmed.