# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2097, 2014AP2295 |
| COMPLETE TITLE: | Prince Corporation, |

Prince Corporation,
      Plaintiff-Intervenor-Respondent,
  v.
James N. Vandenberg,
      Defendant,
Van De Hey Real Estate, LLC,
      Garnishee-Defendant-Cross
      Claimant-Respondent,
Sharon Kempen, Sandra Schmit and Mark
Vandenberg,
      Intervenors-Cross-Claim
      Defendants-Third-Party
      Plaintiffs-Appellants-Petitioners,
  v.
BMO Harris Bank (f/k/a M&I Marshall & Isley)
and State of
Wisconsin,
      Third-Party Defendants,
Wisconsin Department of Revenue,
      Third-Party Defendant-Respondent.

REVIEW OF A DECISION OF THE COURT OF APPEAL
(Reported at 364 Wis. 2d 599, 868 N.W.2d 599)
(Ct. App. 2015 – Published)
PDC No: 2015 WI App. 55

| | |
|---|---|
| OPINION FILED: | June 23, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 25, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | Marc A. Hammer |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| CONCURRED/DISSENTED: | ABRAHAMSON, J. and BRADLEY, A. W., J. concur and dissent (Opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

    For the intervenors-cross-claim defendants-third-party plaintiffs-appellants-petitioners, there were briefs by *George*

*Burnett* and the *Law Firm of Conway, Olejniczak & Jerry, S.C.*, Green Bay.  Oral argument by *George Burnett*.


For the third-party defendant-respondent, the cause was argued by *S. Michael Murphy*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2016 WI 49**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2014AP2097 & 2014AP2295
(L.C. No. 2010CV297)

STATE OF WISCONSIN     :     IN SUPREME COURT

**Prince Corporation,**

       **Plaintiff-Intervenor-Respondent,**

    **v.**

**James N. Vandenberg,**

       **Defendant,**

**Van De Hey Real Estate, LLC,**

       **Garnishee-Defendant-Cross Claimant-Respondent,**

**Sharon Kempen, Sandra Schmit and Mark Vandenberg,**

       **Intervenors-Cross-Claim Defendants-Third-Party Plaintiffs-Appellants-Petitioners,**

    **v.**

**BMO Harris Bank (f/k/a M&I Marshall & Ilsley) and State of Wisconsin,**

       **Third-Party Defendants,**

**Wisconsin Department of Revenue,**

       **Third-Party Defendant-Respondent.**

**FILED**

**JUN 23, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed in part, affirmed in part and remanded.*[1]

¶1 PATIENCE DRAKE ROGGENSACK, C.J. We review a published decision of the court of appeals,[2] which affirmed the circuit court's[3] order entitling the Department of Revenue (DOR) to garnish land contract proceeds due to James N. Vandenberg (James) and three other tenants-in-common of real property, Sharon Kempen, Sandra Schmidt and Mark Vandenberg (collectively, the intervenors), and denying the intervenors' request to partition the real estate that is subject to the land contract.

¶2 Our review centers on three issues: (1) whether the DOR is entitled to garnish any portion of the final land

---

[1] On January 25, 2016, oral arguments were held in this matter. On May 20, 2016, we received a letter from the parties advising the court that the parties had resolved their dispute through settlement and intended to move for voluntary dismissal. The letter requested that we "hold any opinion in this matter in abeyance pending circulation of final settlement documentation." We granted this petition for review in light of its presentation of issues of statewide concern and, accordingly, we issue our decision herein notwithstanding the parties' asserted resolution of their dispute. See Wis. S. Ct. IOP II.L.4. ("[I]f a notice of voluntary dismissal is filed after all of the briefs in the proceeding are filed, the chief justice shall bring the notice to the court for action."); State ex rel. Richards v. Foust, 165 Wis. 2d 429, 440a, 480 N.W.2d 444 (1992) (per curiam) (declining to issue voluntary dismissal pursuant to IOP II.L.4 after "all briefs were filed and the matter was decided by the court and assigned to a justice to write the court's opinion").

[2] Prince Corp. v. Vandenberg, 2015 WI App 55, 364 Wis. 2d 457, 868 N.W.2d 599.

[3] The Honorable Marc A. Hammer of Brown County presided.

contract payment; and, if so, (2) whether the DOR is entitled to garnish 1/4 of the final payment due on the land contract or 1/4 of the land contract's full purchase price; and (3) whether the circuit court erroneously exercised its discretion in refusing to partition the property.

¶3 We conclude that the DOR is entitled to garnish a portion of the final land contract payment, and the portion subject to garnishment is limited to the amount that James could require be paid to him from that payment. We remand to the circuit court to make the factual determination of the amount that James has a right to receive from the final payment.

¶4 Finally, we conclude that the circuit court did not erroneously exercise its discretion by refusing to partition the property. Accordingly, we reverse the court of appeals in part, affirm in part and remand.

## I.  BACKGROUND

¶5 In 1997, James, Sharon Kempen, Sandra Schmidt and Mark Vandenberg acquired real estate located in Brown County as tenants-in-common, with each individual having an undivided 1/4 ownership interest. During the time that they owned the property, James accumulated personal debts that resulted in encumbrances being filed against the property.

¶6 For example, on February 16, 2004, James gave a mortgage to M&I Marshall & Ilsley Bank for a $54,100

3

indebtedness.[4]  On January 4, 2010, DOR docketed two tax warrants totaling $112,655.24 for taxes that James owed.  And on May 6, 2010, Prince Corporation (Prince) obtained a money judgment against James for $165,000.  The judgment was docketed in Brown County on May 6, 2010.  Finally, on June 3, 2010, the State of Wisconsin docketed a judgment against James for $100,000 in Brown County.

¶7  On July 14, 2011, James and the intervenors contracted to sell their property to Van De Hey Real Estate, LLC (Van De Hey) on land contract for $341,700.[5]  The land contract provided that Van De Hey would remit payments in the following manner:  $113,900 at the execution of the contract on July 14, 2011; $113,900 on October 1, 2011; and the remaining $113,900 on April 15, 2012.  The land contract also provided that James and the intervenors were obligated to deliver a warranty deed to the property, "free and clear of all liens and encumbrances" when the final payment was made.

¶8  Van De Hey timely made the first two payments as required by the land contract.[6]  On February 17, 2012, Prince

---

[4] BMO Harris Bank may claim a successor's interest in this mortgage.

[5] At the time of the land contract purchase, the sellers and the buyer knew that there were numerous encumbrances against the real estate as indicated by the title insurance policy.

[6] The parties agreed to indefinitely extend the time for Van De Hey's final payment, pending resolution of the issues before us.

filed a non-earnings garnishment summons and complaint, seeking to garnish Van De Hey's final payment of $113,900 as partial satisfaction of its judgment against James. The intervenors moved to intervene in Prince's garnishment action, and the circuit court granted their motion on June 6, 2012. The intervenors argued that the DOR had an interest superior to Prince's interest. They also argued that garnishment was limited to James's 1/4 share of the final $113,900 payment, which was $28,475. However, on November 6, 2012, the circuit court issued an order entitling Prince to garnish 1/4 of the full contract price, or $85,425. Van De Hey did not make the final payment.

¶9 On November 14, 2013, the intervenors filed a third-party summons and complaint, impleading the DOR as an interested party due to its earlier filed tax warrants that resulted from James's delinquent taxes.[7] They attached as exhibits to their third-party complaint copies of Prince's non-earnings garnishment complaint and the land contract for the sale of the property.

¶10 On December 20, 2013, the DOR answered the third-party complaint, admitting that it claimed an interest in the property because it docketed state income tax warrants against James for

---

[7] The intervenors' third-party complaint sought to implead BMO Harris Bank, the successor in interest of M&I Marshall & Ilsley Bank. BMO Harris Bank has not participated in this review.

5

$64,719.47 and $47,935.77 on January 4, 2010.[8]  The DOR's answer further stated that "judgment is requested in accordance with the foregoing, together with such other and further relief as is just and equitable."

¶11  On April 9, 2014, the intervenors moved for partition as well as reconsideration of the circuit court's November 6, 2012 order entitling Prince to garnish $85,425 from Van De Hey's final land contract payment.  The intervenors argued that Prince's garnishment action should be dismissed due to the DOR's superior tax warrants and that garnishment by any party was limited to James's 1/4 outstanding share of the final payment, or $28,475.  The intervenors also requested partition of the property as the only method of conveying title to Van De Hey "free and clear of all liens and encumbrances" as required by the land contract.

¶12  On reconsideration, the circuit court concluded that it would "maintain[] its previous holding that a valid lienholder may garnish the entirety of [James's] interest in the land sale—one-fourth of the total contract price[,] or $85,425."  However, the circuit court concluded that the DOR's previously-docketed tax warrants were superior to Prince's money

---

[8] The DOR docketed an additional tax warrant against James on August 20, 2012 for $45,320.67.  We also note that the record contains some discrepancies regarding the exact amounts of the tax warrants that were docketed on January 4, 2010.  The title insurance commitment indicates they were in the amounts of $54,064.77 and $48,953.56.  The exact amounts of those warrants are not relevant to the issues that we address.

6

judgment. Therefore, the circuit court held that the DOR, rather than Prince, was entitled to garnish $85,425 from Van De Hey's final payment of $113,900.

¶13 With respect to the intervenors' request for partition, the circuit court acknowledged that "[a]ny person having an interest in real property" has the right to request partition. However, the circuit court denied partition because any such action would prejudice one or more persons with an interest in the property. Both Prince and the intervenors separately appealed the circuit court's order.

¶14 The court of appeals affirmed in all respects, holding that (1) the DOR's answer to the third-party complaint was sufficient to entitle it to garnish a portion of Van De Hey's final payment; (2) the DOR was entitled to garnish 1/4 of the full sale price of the land contract, $85,425; and (3) the circuit court did not erroneously exercise its discretion in denying partition. We granted the intervenors' petition for review.[9]

---

[9] Prince did not petition for review, and has not participated before us. It is undisputed that the DOR's tax warrants were docketed prior to Prince's money judgment. Therefore, for purposes of our review, we assume, without deciding, that the circuit court and court of appeals were correct in holding that the DOR's tax warrants had priority over Prince's money judgment in regard to garnishing James's ownership interest in the final payment due under the land contract.

7

## II.  DISCUSSION

### A.  Standard of Review

¶15 Resolution of this dispute requires us to interpret and apply Wisconsin garnishment statutes.[10]  Statutory interpretation and application are questions of law that we review independently, while benefitting from the analyses of the circuit court and court of appeals.  Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581; Milwaukee Stove & Furnace Supply Co. v. Apex Heating & Cooling, Inc., 142 Wis. 2d 151, 155, 418 N.W.2d 4 (Ct. App. 1987) (explaining that garnishment is a statutory remedy, requiring independent appellate review).

¶16 Although the common law of partition is now codified, it remains an equitable remedy.  Klawitter v. Klawitter, 2001 WI App 16, ¶7, 240 Wis. 2d 685, 623 N.W.2d 169.  Therefore, we review the circuit court's partition decision under the "highly deferential" erroneous exercise of discretion standard, which we apply to equitable remedies.  Id., ¶8 (applying erroneous exercise of discretion to circuit court's discretionary decision in regard to contribution during partition action); Associated Bank N.A. v. Collier, 2014 WI 62, ¶22, 355 Wis. 2d 343, 852 N.W.2d 443 (explaining that review of a circuit court's decision

---

[10] Chapter 812, Subchapter I (2013-14).  All further references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

8

about whether to employ its equitable powers applies the erroneous exercise of discretion standard).

B. General Principles of Statutory Interpretation

¶17 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but also from the context. Id., ¶46. We interpret statutory language in the context in which those words are used; "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id.

¶18 "If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769 (quoting Kalal, 271 Wis. 2d 633, ¶46). However, where the statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous. Kalal, 271 Wis. 2d 633, ¶47. Where the language is ambiguous, we may consult extrinsic sources. Id., ¶50. "While extrinsic sources are usually not consulted if the statutory language bears a plain meaning, we nevertheless may consult extrinsic sources 'to confirm or verify a plain-meaning

9

interpretation.'" Grunke, 311 Wis. 2d 439, ¶22 (quoting Kalal, 271 Wis. 2d 633, ¶51).

## C. Garnishment Principles

¶19 Garnishment is a remedy available to a creditor, the garnishor, seeking satisfaction of its debtor's debts by garnishing property of the debtor, the defendant, that is in the hands of a third-party, the garnishee. See Mundt v. Shabow, 120 Wis. 303, 304, 97 N.W. 897 (1904); Wis. Stat. § 812.01. Garnishment is a wholly statutory remedy, requiring strict compliance. Liberty Loan Corp. & Affiliates v. Eis, 69 Wis. 2d 642, 646-47, 230 N.W.2d 617 (1975) (explaining that the statutory prerequisites for garnishment are strictly enforced); Milwaukee Stove, 142 Wis. 2d at 155 (stating that action for garnishment will not lie absent statutory authority). Therefore, "the right to commence a garnishment action must be found within the provisions of the garnishment statute[s]." Hometown Bank v. Acuity Ins., 2008 WI App 48, ¶8, 308 Wis. 2d 503, 748 N.W.2d 203.

¶20 Chapter 812, Subchapter I of the Wisconsin Statutes governs non-earnings garnishment actions. Wisconsin Stat. § 812.01(1) provides that any "creditor may commence a nonearnings garnishment [action] 'against any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor.'" Id. (quoting Wis. Stat. § 812.01(1)). Wisconsin Stat. § 812.04(3) states that "[a] garnishment action shall be

10

commenced by the filing of a garnishee summons and annexed complaint."

¶21 Pursuant to the foregoing statutes, Prince, the garnishor, commenced the instant garnishment action against Van De Hey, the garnishee, having possession of land contract proceeds due to James, the debtor, by virtue of Van De Hey's obligation to make payments under the land contract. As required by Wis. Stat. § 812.04(3), Prince filed a non-earnings garnishment summons and complaint on February 17, 2012 and timely served the appropriate parties; thereafter, the garnishment action proceeded in circuit court.

¶22 Neither the intervenors nor Van De Hey has argued that the garnishment action was not properly commenced by Prince. Accordingly, we assume, without deciding, that Prince strictly complied with Wis. Stat. § 812.04(3), thereby properly commencing the instant garnishment action against James's right to payment from Van De Hey.

1. Impleader into already-commenced garnishment action

¶23 Although it is undisputed that Prince properly commenced the instant garnishment action, the intervenors argue that the DOR is not entitled to garnish any portion of Van De Hey's final payment because the DOR did not file a non-earnings garnishment summons and complaint after being impleaded into the garnishment action.

¶24 However, Wis. Stat. § 812.17 addresses impleading a third-party into an already-commenced garnishment action where

11

that third-party claims an interest in the property held by the garnishee:

> When the answer of the garnishee discloses that any 3rd person claims the debt or property in the garnishee's hands[,] . . . the court may order that such claimant be impleaded as a defendant in the garnishment action . . . . Upon such service being made[,] such claimant shall be deemed a defendant in the garnishee action, and within 20 days shall answer setting forth the claimant's claim or any defense that the garnishee might have made.

Wis. Stat. § 812.17.

¶25 Initially, we note that Wis. Stat. § 812.17 contemplates impleader when it is the answer of the garnishee that discloses a third-party's claim to the garnishable property. In the instant case, it was not the answer of the garnishee, Van De Hey, that disclosed the DOR's superior claim to a portion of the final payment under the land contract. Rather, upon learning of Prince's garnishment action against Van De Hey, the intervenors moved to intervene and sought to implead the DOR due to tax warrants docketed against the real estate. Accordingly, the intervenors impleaded the DOR into the already-commenced garnishment action by serving a third-party summons and complaint, to which they attached Prince's original non-earnings garnishment complaint.

¶26 Perhaps because they are the very parties who impleaded the DOR, the intervenors do not argue to us that the DOR is not a proper party to the already-commenced garnishment action. Although the intervenors raised this argument to the court of appeals, the court of appeals properly noted that the

12

intervenors did not argue to the circuit court that impleader of the DOR was improper under Wis. Stat. § 812.17. As the intervenors do not raise the issue before us and did not raise the issue to the circuit court, we will not consider it. Shadley v. Lloyds of London, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838 (stating that "[i]t is well-established law in Wisconsin that those issues not presented to the trial court will not be considered for the first time at the appellate level." (citing State v. Gove, 148 Wis. 2d 936, 940-41, 437 N.W.2d 218 (1989); State v. Caban, 210 Wis. 2d 597, 604-05, 563 N.W.2d 501 (1997); Hopper v. City of Madison, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977))).

¶27 Indeed, arguing that the DOR was not a proper party to the garnishment action would have been contrary to the intervenors having sought to implead the DOR in the first instance. Therefore, we assume, without deciding, that the DOR was properly impleaded as a party to the already-commenced garnishment action under Wis. Stat. § 812.17. However, the intervenors argue that the DOR is not entitled to garnishment because it did not file a non-earnings garnishment summons and complaint after being impleaded under Wis. Stat. § 812.17.

¶28 While a non-earnings garnishment summons and complaint are required by Wis. Stat. § 812.04(3) in order to commence a garnishment action, the plain language of Wis. Stat. § 812.17 does not require an impleaded third-party to file a summons and complaint in an already-commenced garnishment action in order to be entitled to garnish the property to which it claims an

interest. We decline to impose a requirement that is plainly not required by the statute. Harris v. Kelley, 70 Wis. 2d 242, 250, 234 N.W.2d 628 (1975) (declining to rewrite statute under the guise of statutory interpretation). Rather, once a garnishment action is commenced under Wis. Stat. § 812.04(3) and the impleaded third-party files an answer setting forth its claim to the property in the garnishee's hands, the impleaded third-party begins its garnishment. Wis. Stat. § 812.17. As aptly noted by the court of appeals, "[t]hat is precisely what happened in this case." Prince Corp. v. Vandenberg, 2015 WI App 55, ¶37, 364 Wis. 2d 457, 868 N.W.2d 599.

¶29 Namely, the DOR answered the third-party complaint, asserting its claim to James's ownership interest in the land contract payment based on state income tax warrants for James's delinquent taxes. Specifically, the DOR's answer stated that it "claims an interest in the Property, by virtue of the following delinquent state tax warrants which have been docketed . . . against James N. Vandenberg." The DOR's answer identified two warrants that were docketed on January 4, 2010.

¶30 We conclude that the DOR's answer sufficiently set forth its claim to the garnishable property at issue in the already-commenced garnishment action; namely, a portion of the

14

final payment due under the land contract.[11] Initially, it is significant that the DOR filed its answer in response to the third-party complaint, which incorporated by reference Prince's original non-earnings garnishment complaint as well as the land contract. Prince's non-earnings garnishment complaint clearly indicates that Prince was seeking to garnish the final payment due under the land contract.

¶31 Furthermore, in listing its state income tax warrants in its answer, the DOR identified its interest in the final payment pursuant to Wis. Stat. § 71.91(4), which provides that unpaid state income taxes "shall be a perfected lien in favor of the [DOR] upon all property and rights to property."[12] This includes both real and personal property. Wis. Stat. § 71.91(6)(a)3. Therefore, by virtue of docketing its state income tax warrants, the DOR obtained a statutory, perfected

---

[11] Wisconsin Stat. § 812.16(1) provides, "No trial shall be had of the garnishment action until the plaintiff has judgment in the principal action." No party has asserted that § 812.16(1) required the DOR to reduce its tax warrants to judgments before it was eligible to garnish a portion of the final land contract payment. Therefore, we assume, without deciding, that § 812.16(1) does not apply under the circumstances presented by this case.

[12] However, "[t]he perfected lien does not give the [DOR] priority over lienholders, mortgagees, purchasers for value, judgment creditors, and pledges whose interests have been recorded before the [DOR]'s lien is recorded." Wis. Stat. 71.91(4). It is undisputed that the DOR's tax warrants were docketed prior to Prince's money judgment and, therefore, have priority in regard to Prince. However, the tax warrants were docketed after James gave a mortgage to M&I Bank on February 16, 2014.

15

lien on James's right to payment from Van De Hey. The DOR requested judgment in the already-commenced garnishment action in accordance with the priority of its tax warrants relative to Prince's docketed money judgment. Accordingly, we conclude that the DOR's answer sufficiently set forth its claim to James's interest in a portion of Van De Hey's final land contract payment.

¶32 Consequently, we conclude that the DOR is entitled to garnish a portion of Van De Hey's final payment under Wis. Stat. § 812.17. Therefore, we must next determine the amount of the final payment that is garnishable by the DOR.

### 2. DOR's garnishable amount

¶33 As set forth above, the court of appeals held that the DOR was entitled to garnish 1/4 of the total land contract purchase price from the final payment because James "has a property right to one-fourth of the full contract price, or $85,425." Prince, 364 Wis. 2d 457, ¶20. Accordingly, the court of appeals allowed the DOR to garnish $85,425 from Van De Hey's final payment of $113,900.

¶34 However, contrary to the court of appeals' conclusion, a garnishor is entitled to garnish only the amount that the debtor could require be paid to him from the property in the hands of the garnishee when the garnishment is served. Collier, 355 Wis. 2d 343, ¶32; Morawetz v. Sun Ins. Office, 96 Wis. 175, 178, 71 N.W. 109 (1897) (explaining that the garnishor steps into the shoes of the debtor and, therefore, has no better rights to property in the hands of the garnishee than the debtor

16

could assert). Wisconsin Stat. § 812.18 provides, as is relevant to the garnishment of Van De Hey:

> From the time of service upon the garnishee, the garnishee shall be liable to the creditor for <u>the property then in the garnishee's possession</u> or under his or her control <u>belonging to the debtor or in which the debtor is interested to the extent of his or her right or interest therein</u> and for all the garnishee's debts due or to become due to the debtor . . . .

(emphases added).

¶35 Moreover, well-established Wisconsin precedent provides that a garnishment action does not give the garnishor any greater rights in the property held by a third party than the debtor himself or herself possessed on the date that the garnishment action was served. <u>Miracle Feeds, Inc. v. Attica Dairy Farm</u>, 129 Wis. 2d 377, 380-81, 385 N.W.2d 208 (Ct. App 1986). In <u>Miracle Feeds</u>, a garnishment action was brought against Zim's Cheese for milk checks payable to the debtor, Attica. <u>Id.</u> at 378-79. A bank, to which Attica also was indebted, intervened in the action, asserting that Attica had assigned its interest in the milk checks to the bank in exchange for the bank making loans to Attica and, therefore, Attica had no interest in the milk checks that could be garnished. <u>Id.</u> at 379-81.

¶36 The court of appeals agreed with the bank. <u>Id.</u> at 379. In explaining the nature of a garnishment action, the court of appeals said, "[i]n effect, the garnishment was 'an action by [Attica] in [Miracle's] name against the garnishee, the purpose of which is to subrogate the plaintiff to the rights

17

of the defendant against the garnishee.'" Id. at 380-81. (quoting Commercial Inv. Trust, Inc. v. Wm. Frankfurth H. Co., 179 Wis. 21, 24, 190 N.W. 1004 (1922)). Because "Miracle merely stands in Attica's shoes," and because Attica had assigned its rights to all milk sale proceeds to the bank long before Miracle's garnishment, there was no property of the debtor (Attica) to obtain from Zim's Cheese. Id. at 381. See also Morawetz, 96 Wis. at 178 (explaining that garnishment creates an "equitable levy" on the debtor's property that is in the hands of the garnishee at the time that the garnishment action is served).

¶37 As set forth above, Prince commenced the instant garnishment action on February 17, 2012, at which time Van De Hey already had made two of the payments due under the land contract. The final payment had not been made and, therefore, the final payment was the only property still in Van De Hey's hands at the time that the garnishment action was served. Therefore, given the foregoing principles, the DOR is entitled to garnish only James's outstanding share of the final payment under the land contract. Stated otherwise, if 1/4 of each of the first two payments has been paid to James or on his behalf, James is entitled to $28,475 of the final payment on the land contract, and that is the amount available for the DOR to

18

garnish.[13]  Wis. Stat. § 812.18; <u>Miracle Feeds</u>, 129 Wis. 2d at 381.

¶38  It is undisputed that James and the intervenors, as tenants-in-common, each held an undivided 1/4 interest in the real estate and each held a 1/4 interest in the proceeds of the land contract; i.e., at the inception of the land contract each tenant-in-common was to have received $85,425 when the third payment of $113,900 was made.  Therefore, part of the $113,900 payment that Van De Hey is holding belongs to James and part belongs to each of the intervenors as the remaining three tenants-in-common.

¶39  Determining the amounts payable to each tenant-in-common from the final payment due under the land contract requires factual findings about the amounts that were paid to or on behalf of James from the first two payments Van De Hey made.  The third-party complaint asserts that the first two payments due to James were made to M&I Bank on James's behalf.

¶40  It is undisputed that, on February 16, 2004, M&I Bank filed a mortgage against the undivided real estate that the parties owned as tenants in common.  The intervenors assert that the mortgage was security for debt James incurred personally.

---

[13] It is undisputed that upon Van De Hey's payment in full of the purchase price, James and the intervenors are required to provide a "Warranty Deed in fee simple of the property, free and clear of all liens and encumbrances."  Because of the significant encumbrances that exceed the final land contract payment, it is not possible to determine when James and the intervenors will be entitled to final payment.

However, the parties who responded to the third-party complaint asserted that they could not admit or deny whether James's portions of the first two payments had been paid to M&I Bank and whether the mortgage arose from debt that James personally incurred.

¶41 If the assertions of the intervenors prove to be factually correct, James is owed $28,475 from the final payment, and it is only $28,475 that is subject to garnishment by the DOR. See Miracle Feeds, 129 Wis. 2d at 380-81 (explaining that garnishor is entitled to garnish only the amount of the debtor's property in the hands of the garnishee when the garnishment action is served).[14] Because the amounts that were paid to James, or on his behalf, from the first two payments have not been conclusively established in the record presented to us, we conclude that a remand to the circuit court is necessary for a factual determination of those amounts.

¶42 We note that any other result would prejudice the intervenors by allowing the DOR to garnish a portion of Van De Hey's final payment that is not owed to James but, rather, is owed to the intervenors as the remaining three tenants-in-common. See Gray v. Rollo, 85 U.S. 629, 634 (1873)

---

[14] The court of appeals detoured into Wis. Stat. § 700.21(1), and employed it in interpreting the land contract "as a matter of law." Prince, 346 Wis. 2d 457, ¶20. We do not employ § 700.21(1) because determining the amount that James could require Van De Hey to pay to him is a question of fact, not a question of law.

20

("If a debt is due to A. and B., how can any court compel the appropriation of it to pay the indebtedness of A. to the common debtor without committing injustice toward B.?"). In sum, we conclude that the DOR is entitled to garnish only what James, himself, could require be paid to him from Van De Hey's final payment. Finally, we address the intervenors' request to partition the property.

## D. Partition

¶43 The intervenors seek to partition the real estate. They assert that partition is the only way in which they will be able to transfer title to Van De Hey "free and clear of all liens and encumbrances" as required under the land contract. The circuit court denied their request to partition the property, as it found that partition would prejudice one or more parties with some interest in the property.

¶44 "Wisconsin Stat. § 842.02 codifies the common law of partition [for real property], but partition remains an equitable action. Under [Wis. Stat. § 842.02], a party 'having an interest in real property jointly or in common with others' may sue for judgment partitioning that interest . . . ." O'Connell v. O'Connell, 2005 WI App 51, ¶8, 279 Wis. 2d 406, 694 N.W.2d 429 (internal citations omitted) (quoting Wis. Stat. § 842.02(1)). Alternatively, where physical partition of the property is impossible, "the [circuit] court may order the land sold and the proceeds of that sale divided." Id. (citing Wis. Stat. § 842.02(2)).

21

¶45 In Wisconsin, title to real estate may have two components: legal title and equitable title. Steiner v. Wis. Am. Mut. Ins. Co., 2005 WI 72, ¶23, 281 Wis. 2d 395, 697 N.W.2d 452. In the case now before us, the real estate was in the process of being sold on land contract. In a land contract sale, legal title to the real estate remains with the vendor until a deed is given, but equitable title is transferred to the vendee at the commencement of the land contract.[15] Wonka v. Cari, 2001 WI App 274, ¶13, 249 Wis. 2d 23, 637 N.W.2d 92. We recognize that the vendor's interest in payments under a land contract has been characterized as an interest in personal property. Lunde v. Fischer, 22 Wis. 2d 637, 646, 126 N.W.2d 596 (1964) (in a decision pre-dating Wisconsin's enactment of marital property, we concluded that a land contract was properly included in vendor-husband's estate as personal property, even though his wife also signed the land contract).

¶46 However, Wis. Stat. § 842.02(1) permits a person "having an interest in real property" to sue for partition, and Wis. Stat. § 840.01 defines an "interest in real property" very broadly to include "an interest that was formerly designated legal or equitable." Accordingly, the intervenors, holding

---

[15] Equitable title gives the vendee "full rights of ownership, including the ability to sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary." Steiner v. Wis. Am. Mut. Ins. Co., 2005 WI 72, ¶23, 281 Wis. 2d 395, 697 N.W.2d 452 (internal quotation marks omitted).

legal title, are proper parties to institute an action to partition the property.

¶47 Our review of the circuit court's partition decision is limited to whether the circuit court erroneously exercised its discretion by refusing to partition the real estate. Klawitter, 240 Wis. 2d 685, ¶8. Under this "highly deferential" standard of review, we must uphold the circuit court's discretionary determination as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." Id. (internal quotation marks omitted) (quoting Wynhoff v. Vogt, 2000 WI App 57, ¶13, 233 Wis. 2d 673, 608 N.W.2d 400); see also Associated Bank, 355 Wis. 2d 343, ¶22.

¶48 We agree with the court of appeals that the circuit court did not erroneously exercise its discretion by refusing to partition the property. First, we note that the circuit court set forth the applicable law in its order. Specifically, the circuit court stated:

> While an action for partition is governed primarily by statute, partition is also equitable in nature. There is a strong presumption favoring actual partition of the property at issue over judicial sale of the property. However, a judicial sale may be appropriate when actual partition would result in prejudice to the owners.

(internal citations omitted).

¶49 After recognizing that its power to order partition is equitable, the circuit court went on to recite relevant facts,

23

noting that "[t]his is not a simple partition case, because of the number of individuals with interests in the property." The circuit court identified James and the intervenors as the "owners" and Van De Hey as the purchaser of the property, having already made two payments under the land contract.[16] Additionally, the circuit court noted the numerous encumbrances on the property, and identified Prince, the DOR, the State of Wisconsin, and BMO Harris Bank as having asserted interests in the real estate.

¶50 After correctly reciting the facts relevant to the dispute, the circuit court determined that neither physical partition of the real estate nor judicial sale of the real estate would be equitable under the circumstances because any such action would have prejudicial effects on one or more interested persons. Specifically, the circuit court concluded that physical partition would be prejudicial to Van De Hey, holding equitable title, because Van De Hey had contracted to receive the entire property for the purchase price and had made two payments in furtherance of the land contract. The circuit

---

[16] Whether courts conclude that a vendor is an "owner" of the property under consideration has depended on the statute being interpreted because the term, "own," has been used "to describe a great variety of interests, and may vary in significance according to context and subject matter." City of Milwaukee v. Greenberg, 163 Wis. 2d 28, 35, 471 N.W.2d 33 (1991) (quoting Merrill Ry. & Lighting Co. v. Merrill, 119 Wis. 249, 254, 96 N.W. 686 (1903)). This concern is of less importance here where "interest in real property" is so broadly defined for purposes of partition.

24

court said that it was possible that partition could result in Van De Hey receiving an unencumbered 3/4 of the property from the intervenors and an encumbered 1/4 of the property from James.[17]  However, Van De Hey contracted to purchase the entire property "free and clear of all liens and encumbrances." Partition also would result in reducing the security by 3/4 for others who have encumbrances on the real estate if their encumbrances were to remain on only James's 1/4 interest rather than on the undivided interests in the property.[18]  Therefore, the circuit court refused to order partition as inequitable.

---

[17] As a tenant in common, James possesses an undivided interest in the entire property.  Nettesheim v. S.G. New Age Prods., Inc., 2005 WI App 169, ¶10, 285 Wis. 2d 663, 702 N.W.2d 449 ("A tenancy in common is defined as a 'tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property . . . .'" (quoting Black's Law Dictionary 1507 (8th ed. 2004))). Therefore, lienholders on James's interest likewise possess an undivided interest in the entire property.  However, Wis. Stat. § 842.14(3) provides:

> If partition is adjudged, existing liens shall not be affected or impaired, except that a lien upon an undivided interest or estate shall thereafter be a charge only on the share assigned to the party against whom it exists, which share shall be charged with its just proportion of the costs in preference to such lien.

(emphases added).  Consequently, partition would have the effect of reducing by 3/4 the size of property to which the liens attached if after partition only James's 1/4 interest were affected rather than the liens affecting the whole property.

[18] See supra n.16.

25

¶51 Next, the circuit court considered, but refused to order, judicial sale of the property, concluding that it would likewise be prejudicial to Van De Hey. The circuit court properly noted that judicial sale occurs at public auction pursuant to Wis. Stat. § 842.17. Again, as Van De Hey contracted to purchase the entire property and made payments in furtherance thereof, public auction of the property would not result in Van De Hey receiving the benefit of its bargain.[19]

¶52 Additionally, the circuit court specifically noted and considered its ability to fashion some other remedy such as partitioning the real estate and ordering a private sale to Van De Hey "free and clear of all liens and encumbrances." See Schmit v. Klumpyan, 2003 WI App 107, ¶¶22, 26, 264 Wis. 2d 414, 663 N.W.2d 331 (explaining that the circuit court in a partition action is not limited to the remedies set out in the statutes so

_____

[19] Wisconsin Stat. § 842.17(1) provides that "[i]f the court finds that the land or any portion thereof is so situated that partition cannot be made without prejudice to the owners, and there are no tenants or lienholders, it may order the sheriff to sell the premises so situated at public auction."

The property in the instant case is subject to numerous encumbrances. Wisconsin Stat. § 842.17(2)-(3) guide circuit courts in proceeding with judicial sale when there are lienholders who do not agree to a sale. We note that the record is devoid of any indication of whether Prince, BMO Harris, the DOR or the State of Wisconsin would or would not consent to a sale. Without this information, we cannot expect the circuit court to have proceeded with judicial sale under Wis. Stat. § 842.17 in the face of the numerous lienholders' interests in the property. Although the intervenors could have brought this requisite information to the circuit court's attention, they failed to do so.

26

long as the remedy chosen is equitable); Heyse v. Heyse, 47 Wis. 2d 27, 37, 176 N.W.2d 316 (1970) (authorizing circuit court to order private sale if it considers such sale appropriate). However, the circuit court stated that the intervenors had not sufficiently explained how such a sale actually would occur.

¶53 Moreover, as properly noted by the circuit court, among Prince, the DOR, State of Wisconsin, and BMO Harris Bank, the property is encumbered by more than $400,000 of indebtedness. Therefore, Van De Hey's entire purchase price for the property, $341,700, is not enough to satisfy all of the existing encumbrances. Therefore, we are not persuaded by the intervenors' argument that partitioning or selling the property would result in James and the intervenors being able to deliver title "free and clear of all liens and encumbrances" as required under the land contract.

¶54 Consequently, physical partitioning of the property, or ordering it sold to Van De Hey "free and clear of all liens and encumbrances," would affect all of the foregoing encumbrances, resulting in prejudice to those interests. It is not equitable to permit the intervenors to unilaterally terminate the interests of lienholders, one of whom objected to

27

partition before us.[20] Such a result would be contrary to the protections afforded to lienholders in the partition statutes. See, e.g., Wis. Stat. § 842.17.

¶55 Given the numerous interests noted by the circuit court and the various consequences that any partitioning action would have, we cannot conclude that no reasonable judge could have denied partition under the facts herein presented. See Heyse, 47 Wis. 2d at 37 (noting that partition statutes are "permissive and within the discretion" of the circuit court to order such remedies where appropriate). Accordingly, we conclude that the circuit court demonstrated a rational decision-making process in concluding that partition was not an appropriate remedy after setting forth the relevant facts and law. Therefore, we agree with the court of appeals' conclusion that the circuit court did not erroneously exercise its discretion by denying partition of the property based on the record then before the circuit court.

III. CONCLUSION

¶56 In light of the foregoing, we conclude that the DOR is entitled to garnish a portion of the final land contract

---

[20] All lien holders have not participated before us, but DOR has participated and objected to partition because of the effect that it would have on its lien. DOR also asserted that it had had no voice in the terms of sale to Van De Hey, which terms could affect its interests. Again, we note that our review of the circuit court's partition decision is limited to the record before the circuit court, and we review it for an erroneous exercise of discretion. Klawitter v. Klawitter, 2001 WI App 16, ¶8, 240 Wis. 2d 685, 623 N.W.2d 169.

28

payment, and the portion subject to garnishment is limited to the amount that James could require be paid to him from that payment. We remand to the circuit court to make the factual determination of the amount that James has a right to receive from the final payment.

¶57 Finally, we conclude that the circuit court did not erroneously exercise its discretion by refusing to partition the property. Accordingly, we reverse the court of appeals in part, affirm in part and remand for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed in part, affirmed in part and remanded.

¶58 SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* Counsel for Vandenberg's co-tenants in common advised the court in a letter dated May 20, 2016, that the parties reached a settlement in the instant case. The letter asked that "the Court hold any opinion in this matter in abeyance pending circulation of final settlement documentation," and advised that "[a] formal stipulation and order for dismissal will be submitted to the Court in short order as soon as the parties finalize the documentation necessary to effectuate this settlement."

¶59 After the opinions in the instant case were scheduled for release, on June 21, 2016, counsel for Vandenberg's co-tenants in common submitted a "stipulation to dismiss appeal" to the Clerk of the Wisconsin Supreme Court signed by counsel for Vandenberg's co-tenants in common, the Wisconsin Department of Revenue, and Prince Corporation.[1] The cover letter and stipulation are attached.

¶60 Other parties have appeared at various stages in the instant case. For example, Van De Hey Real Estate, LLC, the prospective buyer of the land at issue in the instant case, was represented by counsel in the circuit court. Only Vandenberg's co-tenants in common, the Department of Revenue, and Prince Corporation, however, appeared in the court of appeals, and only

---

[1] The justices received the stipulation on June 22, 2016.

1

the co-tenants in common and the Department of Revenue filed briefs and argued before this court.

¶61 The intended effect of this stipulation is somewhat unclear. The cover letter says there is a proposed order, but no proposed order is attached. The cover letter says the parties have fully resolved the matter and includes the case numbers in both the circuit court and this court. The stipulation, however, is captioned as a "stipulation to dismiss appeal" and is signed only by the parties who have appeared in the court of appeals and this court. Thus, the parties signing the stipulation might wish only to dismiss this review, not the underlying action in the circuit court.

¶62 Although the majority opinion acknowledges the receipt of the May 20, 2016 letter, the majority opinion does not acknowledge the receipt of the stipulation sent on June 21, 2016. Rather, the majority opinion explains that "we issue our decision herein notwithstanding the parties' asserted resolution of their dispute" because the issues raised in the instant case are of statewide importance.[2]

¶63 I agree that these opinions should be released: The issues raised are important; the issues raised are likely to recur; the court unanimously agrees that the court of appeals erred in deciding the garnishment issues presented; and the justices disagree about partition.

---

[2] Majority op., ¶1 n.1.

2

¶64 I disagree, however, with the decision to issue opinions today. I would hold our opinions pending clarification of whether remanding the cause to the circuit court remains the appropriate course in light of the parties' "settlement."

¶65 Issuing the majority opinion in its present form risks confusion over whether the fact finding the majority directs still must take place on remand and whether the circuit court may allow the parties to dismiss their action by stipulation given the majority opinion's direction on the remand.[3]

¶66 I turn now to the merits. Although the majority opinion correctly decides the garnishment issues presented, the decision is an exercise in futility. The various claimed rights and interests in the real property remain unresolved. The majority opinion leaves the parties in legal and financial limbo.

¶67 I dissent on the issue of partition. I would reverse the decision of the court of appeals holding that the circuit court did not err in refusing to order partition.[4] Were it not for the parties' possible settlement, I would remand the cause to the circuit court to consider whether to order partition by sale to Van De Hey or to consider any other equitable remedies

---

[3] See Wis. Stat. § 805.04 (discussing voluntary dismissal). For comments, see, e.g., Patricia Graczyk, The New Wisconsin Rules of Civil Procedure Chapters 805-807, 59 Marq. L. Rev. 671, 677-78 (1976).

[4] See Prince Corp. v. Vandenberg, 2015 WI App 55, ¶¶48-50, 364 Wis. 2d 457, 868 N.W.2d 599.

that may be appropriate. The court of appeals' decision (and the circuit court's decision denying partition) erred in concluding that ordering partition would result in prejudice either to the buyer, Van De Hey, or to James Vandenberg's creditors, who apparently hold liens worth more than $400,000 against James Vandenberg's share of the real property.

¶68 The third payment under the land contract is the subject of the garnishment proceedings. Why, given the majority opinion's conclusions, would Van De Hey pay Vandenberg and his co-tenants in common the third installment due under the land contract when it is obvious that, without additional actions being taken, Vandenberg and the other tenants in common cannot fulfill the terms of the land contract——that is, they cannot provide Van De Hey title to the real property free and clear of all encumbrances?

¶69 James Vandenberg, his co-tenants in common, and Van De Hey ask for a fair opportunity to present their partition claim to the circuit court in an effort to clear title. I would give them that opportunity.[5]

---

[5] For background on and discussions of partition, see, for example, 7 Powell on Real Property § 50.07 (Michael Allan Wolf ed., 2009); 4 Thompson on Real Property ch. 38 (David A. Thomas ed., 3d ed. 2004); Clark D. Knapp, A Treatise on the Law of Partition of Real and Personal Property (1887); John Norton Pomeroy, A Treatise on Equity Jurisprudence §§ 1386-90 (Spencer W. Symons ed., 5th ed. 1941); Annotation, Partition: Division of Building, 28 A.L.R. 727 (current with weekly additions) (collecting cases).

4

¶70 As the court of appeals recognized, the value of the entire real property, let alone James Vandenberg's one-quarter interest, is substantially less than the amount of the recorded liens and encumbrances against James Vandenberg's one-quarter interest.[6]

¶71 At the same time, Van De Hey has already paid $227,800 for the property in the first two payments on the land contract. Some of that money apparently may have gone to satisfy a first mortgage against James Vandenberg's one-quarter interest in the property. If the sale cannot go forward because title cannot be provided free and clear of all liens and encumbrances, then Van De Hey likely will not make the third and final payment and will try to recover its other payments.

¶72 Partition by sale seems to offer a way that the land contract transaction can be completed and the lienholders fairly compensated in order of priority, in a procedure akin to a foreclosure. In the instant case, partition would be initiated by the title holders. In foreclosure, the lienholders initiate the procedure.

¶73 James Vandenberg, the intervenors (Vandenberg's co-tenants in common), and the buyer, Van De Hey, seek partition by sale. They argue that partition by sale would enable Van De Hey to make the final payment under the land contract; would enable James Vandenberg's one-quarter share of the proceeds of the

---

[6] See Prince, 364 Wis. 2d 457, ¶51.

partition by sale to be distributed to his lienholders in order of priority; would enable the liens on James Vandenberg's share of the real property to be extinguished; would leave James Vandenberg liable for debts to his creditors; and would allow James Vandenberg and the co-tenants in common to provide title to the real property to Van De Hey (or another buyer) free and clear of all encumbrances.[7]

---

[7] The Department of Revenue asserts that it would be "extraordinary" for a circuit court to order partition and a private sale, and that the circuit court's refusal to order this "extraordinary" remedy is not an erroneous exercise of discretion. Even if partition were an extraordinary remedy (and it is not), that does not mean it is an inappropriate remedy in the circumstances of the instant case.

The Department's proposal that the land contract vendors who are not debtors obtain releases of the liens (echoed by the court of appeals, see Prince, 364 Wis. 2d 457, ¶51) appears impractical, especially when the liens and encumbrances are apparently substantially more than the value of the property.

¶74 I conclude that the circuit court erroneously exercised its discretion as a matter of law in denying partition by sale.[8]

¶75 The court of appeals affirmed the circuit court's denial of partition, concluding that partition would prejudice both Van De Hey and the lienholders.[9] The court of appeals erred as a matter of law in failing to recognize that in the partition

---

[8] The majority opinion (¶16) asserts that our review of the circuit court's partition decision is "highly deferential," citing Associated Bank N.A. v. Collier, 2014 WI 62, ¶22, 355 Wis. 2d 343, 852 N.W.2d 443 and Klawitter v. Klawitter, 2001 WI App 16, ¶8, 240 Wis. 2d 685, 623 N.W.2d 169. Associated Bank does not use the phrase "highly deferential," but Klawitter does. Although Klawitter states that our review of equitable determinations is "highly deferential," the case it cites for the standard of review, Tralmer Sales & Service, Inc. v. Erickson, 186 Wis. 2d 549, 572, 521 N.W.2d 182 (Ct. App. 1994), states (with emphasis added) that "[o]ur review of a trial court's discretionary decision is highly deferential," but provides no citation at all for the "highly deferential" language. I conclude that our standard for reviewing an equitable determination like partition is no more or less deferential than our usual review of other exercises of discretion.

[9] Prince, 364 Wis. 2d 457, ¶¶48-50. Van De Hey asked the circuit court to order partition. It did not think it would be prejudiced.

The majority opinion also concludes that partition would prejudice "one or more interested persons," including James Vandenberg's various creditors. See majority op., ¶¶50-52. The Wisconsin partition statutes focus on prejudice "to the owners . . . ." See, e.g., Wis. Stat. §§ 842.10, 842.11, 842.17(1). Thus it is unclear under the plain language of the statute whether the prejudice with which the majority opinion and court of appeals were concerned is relevant to the availability of partition.

7

as proposed by the intervenors, all persons interested in the real property (including Van De Hey and the lienholders) would have an opportunity to be heard and have their interests determined.[10] See Parts II and III of this dissent.

¶76 Because it has not been shown that partition will prejudice the rights or interests of persons with an interest in the real property, I disagree with the conclusions of the circuit court and court of appeals.

¶77 I would, in the absence of the parties' settlement, remand the cause to the circuit court to consider whether to order partition by sale or any other equitable remedies necessary to untangle this thorny dispute.

¶78 For the reasons set forth, I write separately.

I

¶79 I begin by considering the nature of equitable remedies and the equitable powers of a circuit court. I then turn to partition. Partition is an equitable remedy dating back

---

[10] See 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1387 (Spencer W. Symons ed., 5th ed. 1941) (discussing whether and under what circumstances mortgagees and judgment creditors of tenants in commons should be made parties to partition proceedings); see also Wis. Stat. § 842.04 (stating that, in a partition action, "[i]f a judgment affecting the interest of any . . . lienholder . . . is demanded, such person must be joined as a defendant").

8

to Elizabethan times.[11]  In Wisconsin, "partition is a remedy under both the statutes and common law."[12]

¶80 As the following texts and cases recognize, equitable powers are broad and flexible:

- Equity has the "power to enlarge the scope of these ordinary forms of relief, and even to contrive new ones adapted to new circumstances . . . ." 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 116 (Spencer W. Symons, 5th ed. 1941).

- "If the customary forms of relief do not fit the case, or a form of relief more equitable to the parties than those ordinarily applied can be devised, no reason is perceived why it may not be granted." Meyer v. Reif, 217 Wis. 11, 20, 258 N.W. 391 (1935).[13]

---

[11] John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1387 (Spencer W. Symons ed., 5th ed. 1941) ("As early as the reign of Elizabeth, partition became a matter of equitable cognizance; and now the jurisdiction is established as of right in England and in the United States.") (footnotes omitted).

[12] Watts v. Watts, 137 Wis. 2d 506, 535, 405 N.W.2d 303 (1987).

[13] See also Prince v. Bryant, 87 Wis. 2d 662, 674, 275 N.W.2d 676 (1979) ("[T]he trial court has the power to apply [an equitable] remedy as necessary to meet the needs of the particular case."); Harrigan v. Gilchrist, 121 Wis. 127, 236, 99 N.W. 900 (1904) ("Though no precedent may be at hand in a given situation, since principles of equity are so broad that the wrong involved [or the right to be enforced] need not go without a remedy, its doors will swing open for the asking, and a new precedent be made, an old principle again being illustrated.").

- "Equity can, at times, do complete justice in the resolution of the controversy before the court, and the court will use the remedy in order to prevent the same controversy in the future." Mulder v. Mittelstadt, 120 Wis. 2d 103, 116, 352 N.W.2d 223 (1984) (citations omitted).

- "Equity has followed the true principle of contriving its remedies so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated. It has, therefore, never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent, but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case . . . ." 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 111 (Spencer W. Symons ed., 5th ed. 1941).

¶81 Partition is an equitable remedy that allows a court to divide real property owned in undivided shares by two or more persons either physically (into individually owned, separate parcels) or, if division of the real property cannot be made, then by sale with the proceeds divided.[14]

---

[14] See 8 Jay E. Grenig, Wisconsin Pleading and Practice, § 76:2 (5th ed. 2012).

10

¶82  "The right of a cotenant to partition and convey his or her interest in real property is favored in the law; it is often said to be a matter of right."  Schneider v. Schneider, 132 Wis. 2d 171, 176, 389 N.W.2d 835 (Ct. App. 1986) (citation omitted).

¶83  The phrase "interest in real property," used in Schneider and oft-used in the partition statutes, is defined in Wis. Stat. § 840.01 (for the purposes of chapters 840 to 846) as including "security interests and liens on land . . . ."[15] Chapter 842 of the statutes governs partition.

¶84  Section 842.02 declares that a person having an interest in real property may sue for partition: "A person having an interest in real property jointly or in common with others may sue for judgment partitioning such interest unless an action for partition is prohibited elsewhere in the statutes or by agreement between the parties for a period not to exceed 30 years."

¶85  In partitioning real property, a circuit court has broad equitable powers.  For example, a circuit court may order partition and a private sale that tracks the terms of an earlier contract.  As this court stated in Heyse v. Heyse, 47

---

[15] Wisconsin Stat. § 842.01(1) defines "interest in real property" as follows:  "Interest in real property in addition to the interests described in s. 840.01, includes rights and interests in water power . . . .  Interests of vendees under land contracts are excluded."  Section 842.01(2) states that "'[l]ien' includes encumbrances" (emphasis added).

11

Wis. 2d 27, 37, 176 N.W.2d 316 (1970): "[The statute], although authorizing a sheriff's sale, does not compel such sale. It is permissive and within the discretion of the trial judge to order a sheriff's sale if he [or she] considers it appropriate. We see no reason why the court cannot under the terms of these statutes direct a sale by the parties, at least initially."

¶86 This court and the court of appeals have stated various other principles of law governing the equitable remedy of partition. For example:

- "Equity does not limit the trial court to the statutory partition remedies found in Wis. Stat. § 842.02(2). The power of the court to 'enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances' makes it possible that in its discretion the trial court could have ordered a sale tracking the terms and conditions'" of, for example, an option contract. Schmit v. Klumpyan, 2003 WI App 107, ¶26, 264 Wis. 2d 414, 663 N.W.2d 331.

- "[I]t is within the discretion of the trial court to order any remedy, including a private sale by the parties, that is equitable." Schmit, 264 Wis. 2d 414, ¶22 (citing Heyse, 47 Wis. 2d at 37).

- "The equitable nature of a partition action gives the trial court the discretion to fashion a remedy that meets the needs of the specific case." Schmit, 264 Wis. 2d 414, ¶26 (citing Mulder, 120 Wis. 2d at 115).

12

- A sale of the real property is a legitimate goal of a partition. See Schmit, 264 Wis. 2d 414, ¶25.

- In certain cases, equity can "do complete justice in the resolution of the controversy before the court," and the court will use the equitable remedy in order to prevent future controversy. Mulder, 120 Wis. 2d at 116; see also Schmit, 264 Wis. 2d 414, ¶26.

## II

¶87 I now turn to the decision of the circuit court relating to partition. The circuit court concluded that partition was inappropriate in the instant case because it would prejudice Van De Hey.

¶88 A finding of prejudice to the owners "within the meaning of Wis. Stat. § 842.17(1) requires a legal conclusion. We are not bound by a trial court's conclusion of law." LaRene v. LaRene, 133 Wis. 2d 115, 120-21, 394 N.W.2d 742 (Ct. App. 1986) (internal citation omitted).

¶89 The circuit court misinterpreted the law. It concluded its equitable powers in ordering partition were limited to only those remedies contained in Wis. Stat. ch. 842. In so doing, the circuit court determined that either a physical partition of the real property or a judicial sale at a public auction would be prejudicial to Van De Hey.[16]

---

[16] Prince, 364 Wis. 2d 457, ¶¶47-49.

13

¶90 The circuit court failed to recognize that it was not limited to the statutory remedies in ch. 842 and that Van De Hey did not consider partition prejudicial to it. See Schmit, 264 Wis. 2d 414, ¶22 (citing Heyse, 47 Wis. 2d at 37). The circuit court should have considered whether the appropriate equitable remedy would have been ordering partition, specifically partition by sale tracking the terms and conditions of the parties' land contract, or whether some other equitable remedy was available.

¶91 The circuit court erred in failing to consider partition seriously as an available equitable remedy, in failing to recognize the scope of its discretion in ordering partition, and in failing to recognize that partition need not prejudice the rights of Van De Hey.

### III

¶92 I now turn to the decision of the court of appeals. The court of appeals concluded that partition and a sale tracking the terms of the parties' land contract would prejudice the interests of Van De Hey and James Vandenberg's lienholders.

¶93 The court of appeals acknowledged that the circuit court could have exercised its discretion to order partition and a sale of the real property under the terms of the parties' contract.[17] The court of appeals affirmed the circuit court's denial of partition, however, after concluding that "this

---

[17] Prince, 364 Wis. 2d 457, ¶50.

procedure would clearly prejudice the lienholders . . . by terminating the security for Vandenberg's debts."[18]

¶94 The court of appeals erred, in my opinion, as a matter of law.[19] Contrary to what the court of appeals believed, partition does not necessarily strip lienholders of their rights.

¶95 To understand partition and its effect on lienholders' rights and interests, I begin with guiding legal principles.

¶96 First, when real property is owned by tenants in common, as in the instant case, with each individual co-tenant having an equal, undivided ownership interest, a creditor of an individual co-tenant may claim an interest only in that co-tenant's share of the real property or proceeds of a sale thereof.[20] In other words, a creditor's rights in the real property or proceeds of a sale are no greater than the debtor's.

---

[18] Prince, 364 Wis. 2d 457, ¶50.

[19] Although the court of appeals focused on prejudice to the lienholders, the partition statutes focus on prejudice to the owners of the real property. See, e.g., Wis. Stat. §§ 842.10, 842.11, 842.17(1).

[20] 4 Thompson on Real Property, § 32.07(e) (David A. Thomas ed., 3d ed. 2004).

A creditor has no rights in any of the interests held by the remaining, non-debtor co-tenants.[21]

¶97 Thus the lienholders are entitled to no more than James Vandenberg's one-quarter interest in the real property. The liens attached only to James Vandenberg's one-quarter interest in the real property, nothing more.[22] As a result, partition need not prejudice the lienholders; it would merely confine the lienholders' interests to the interest in the real

---

[21] See, e.g., 4 Thompson on Real Property § 32.07(e) (David A. Thomas ed., 3d ed. 2004) ("Because each tenant in common has an interest in the estate, a creditor of one cotenant can attach that cotenant's share. . . . By the same token, the non-debtor cotenant retains all the usual rights in the estate: the creditor cannot complain, for example, if another cotenant transfers an interest or begins partition proceedings. The creditor, in short, can have no greater rights in the estate than the debtor.") (footnotes omitted) (internal alterations omitted); see also 7 Powell on Real Property § 50.07[3][a] (Michael Allan Wolf ed., 2004) ("Each tenant in common has the right to compel partition of the estate under judicial supervision. . . . [T]he right to partition is unconditional and cannot be defeated by a mere showing that a partition would be inconvenient, injurious, or even ruinous to an adverse party. The right to partition is an inherent element of the tenancy in common, designed to prevent a forced continuation of shared ownership of property. To deny it is to effectively expand the property rights of one cotenant at the expense of other cotenants.")

[22] See, e.g., 4 Thompson on Real Property § 32.07(e) (David A. Thomas ed., 3d ed. 2004) ("[A] judgment creditor's interest in the tenancy in common is limited to the share of the indebted cotenant . . . .")

16

property on which the liens are secured——namely, James Vandenberg's one-quarter interest.[23]

¶98 Because the liens may significantly exceed the value of James Vandenberg's one-quarter interest (indeed they may exceed the value of the property as a whole), some of the lienholders may not get paid from the collateral. This result may be inevitable, regardless of whether partition is granted. James Vandenberg's interest in the real property apparently may not be large enough to satisfy his debts, and denying partition in the instant case will not change that fact.[24]

¶99 When a judgment of partition would affect the interest of, among others, a lienholder or a person in physical

---

[23] The majority opinion appears to agree with the circuit court that "[p]artition . . . would result in reducing the security by 3/4 for others who have encumbrances on the real estate if their encumbrances were to remain on only James's 1/4 interest . . . ." See majority op., ¶50. This assertion is erroneous under both partition law and garnishment. The only portion of the property encumbered by the lienholders is James Vandenberg's one-quarter interest. Whether partition is ordered or not will not change that fact. The partition sought by James Vandenberg, the intervenors, and Van de Hey is a partition by sale, not a physical partition. Thus, the majority opinion's assertion that "partition would have the effect of reducing by 3/4 the size of the property to which the liens attached" is also erroneous. See majority op., ¶50 n.17.

[24] Despite the majority's denial of partition in the instant case, the tenants in common retain the right to sever the tenancy in common at any time in the future. It makes little sense to require the intervenors to return to court later to sever their interests when the same result can be achieved in the instant case.

possession, such persons <u>must</u> be joined as defendants. <u>See</u> Wis. Stat. § 842.04.

¶100 If the circuit court determines that partition is proper, it may render a judgment of partition. <u>See</u> Wis. Stat. § 842.14(1). Partition severs the lienholder's interest in the debtor's undivided share of the estate. <u>See</u> Wis. Stat. § 842.14(3) ("If partition is adjudged, existing liens shall not be affected or impaired, except that a lien upon an undivided interest or estate shall thereafter be a charge <u>only on the share assigned to the party against whom it exists</u> . . . .") (emphasis added).

¶101 Other provisions of the partition statutes, however, pertain to the interests of lienholders when a partition by sale occurs. The circuit court may order a partition by sale even if tenants or lienholders do not consent, subject to the nonconsenting tenants or lienholders' interests. <u>See</u> Wis. Stat. § 842.17(3). In the event of such a sale, the amount of the liens upon the undivided shares is first determined, and the court orders "a distribution of the money pertaining to such shares to be made among the lien creditors according to the priority thereof, respectively; and the clerk of court shall procure satisfaction thereof to be acknowledged as required by law and cause such lien to be duly satisfied of record . . . ." <u>See</u> Wis. Stat. § 842.23.

¶102 The court of appeals did not consider these provisions or other provisions in the partition statutes that confine the

18

lienholders' interests to the debtor's share of the property to which the lien attaches.

¶103 The court of appeals, in my opinion, should have considered these statutes, as well as Wis. Stat. § 842.24, which discusses partition proceedings to settle liens as follows:

> **842.24 Proceedings not to affect whom.** The proceedings to ascertain and settle the amount of liens, as herein provided, shall not affect any other party in such action nor delay the paying over or investing the moneys to or for the benefit of any party upon whose interest there does not appear to be any existing lien.

¶104 In the exercise of its equitable discretion to determine the appropriate remedy in the instant case, I conclude that, in the absence of the parties' settlement, the circuit court should give full consideration on remand to the request of James Vandenberg, the intervenors, and Van De Hey for partition and to the interests of the lienholders.

¶105 Because I conclude that the circuit court and court of appeals made errors of law by not fully considering equitable remedies and partition, I would reverse the decision of the court of appeals and would, setting aside my questions regarding the parties' settlement, remand the cause to the circuit court for further proceedings to consider partition and other appropriate equitable remedies.

¶106 For the reasons set forth, I write separately.

¶107 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

From:                                    06/21/2016 16:08    #761 P.001/003

Thomas M. Olejniczak
Frederick L. Schmidt
R. George Burnett
Gregory A. Grobe
Toni L. Kluess
Robert M. Charles
Brick N. Murphy
Jodi Arndt Labs
David H. Weber
Ross W. Townsend
Michele M. McKinnon
T. Wickham Schmidt
Kurt A. Goehre
James M. Ledvina
Steven J. Krueger
Jill J. Ray
Joshua M. Koch

Of Counsel:
Gregory B. Conway

Retired:
J. Michael Jerry

## *Law Firm of*
# CONWAY, OLEJNICZAK & JERRY, S.C.

( Since 1976 )

Telephone: (920) 437-0476

Facsimile: (920) 437-2868

gb@lcojlaw.com

www.lcojlaw.com

June 21, 2016

**VIA FACSIMILE ((608)267-0640)**

**RECEIVED**

Diane M. Fremgen, Clerk of Courts
Supreme Court of Wisconsin
P.O. Box 1688
Madison, WI 53701-1688

JUN 2 1 2016

CLERK OF COURT OF APPEALS
OF WISCONSIN

Re:   Prince Corporation vs. James N. Vandenberg, et al.
      Brown County Circuit Court Case No. 10-CV-297
      Appellate Court Case Nos. 2014AP2097 and 2014AP2295

Dear Ms. Fremgen:

As previously advised, the parties have now fully resolved the above-entitled matter and an original Stipulation and Order for Dismissal confirming that resolution is currently en route to your office via U.S. Mail. For your ease of reference, I enclose a courtesy copy of the fully executed Stipulation along with this correspondence.

I observed today that the Court's decision is scheduled for release on Thursday and write to notify the Court that this appeal has been resolved

Very truly yours,

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.

By: _____
     George Burnett

GB:JMK  (201215.076:2363852)
Encl.
c:    Atty. S. Michael Murphy
      Atty. Douglaw W. Rose
      Atty. Jonathan T. Smies

*231 South Adams Street* • Green Bay, WI 54301
P.O. Box 23200 • Green Bay, WI 54305-3200 • Phone: 920.437.0476 • Fax: 920.437.2868

1

From:                                    06/21/2016 16:09     #761 P.002/003

# FILED

## JUN 2 1 2016

CLERK OF SUPREME COURT
OF WISCONSIN

Appeal No. 2014AP002097 / Appeal No. 2014AP002295

## State of Wisconsin
# SUPREME COURT

PRINCE CORPORATION,

*Plaintiff-Intervenor-Respondent,*

v.

JAMES N. VANDENBERG,

*Defendant,*

VAN DE HEY REAL ESTATE, LLC,

*Garnishee-Defendant-Cross Claimant-Respondent,*

SHARON KEMPEN, SANDRA SCHMIT AND MARK VANDENBERG,
*Intervenors-Cross-Claim Defendants-Third-Party Plaintiffs-Appellants-
Petitioners,*

v.

BMO HARRIS BANK, (f/k/a M&I Marshall & Isley),
AND STATE OF WISCONSIN.

*Third-Party Defendants,*

WISCONSIN DEPARTMENT OF REVENUE,

*Third-Party Defendant-Respondent.*

Appeal from a Final Order of the Court of Appeals, District III, of the State
of Wisconsin, Confirming a Final Order of the Circuit Court for Brown
County,
The Honorable Marc A. Hammer, Presiding
(Trial Court Case No. 2010CV000297)

## STIPULATION TO DISMISS APPEAL

The parties, by their respective counsel undersigned, stipulate to the dismissal of

this appeal on its merits and without costs to either party.

1

Dated this 21 day of ~~May,~~ June 2016

Law Firm of Conway, Olejniczak & Jerry, S.C.
Attorneys for Intervenors-Cross-Claim Defendants-Third-Party
Plaintiffs-Appellants-Petitioners Sharon Kempen, Sandra Schmidt,
and Mark Vandenberg

_____
Attorney George Burnett
State Bar No. 1005964
231 S. Adams Street
P.O. Box 23200
Green Bay, WI 54305-3200
Phone:     (920)437-0476
Fax:       (920)437-2868

Dated this 20 day of ~~May,~~ June 2016

Wisconsin Department of Revenue
Attorneys for Third-Party Defendant-Respondent
Wisconsin Department of Revenue

_____
Attorney S. Michael Murphy
State Bar No. 1078149
P.O. Box 7857
Madison, WI 53707-7857
Phone:     (608)266-5457
Fax:       (608)267-2223

Dated this 11 day of May, 2016

Rose & deJong, S.C.
Attorneys for Plaintiff-Intervenor-Respondent
Prince Corporation

_____
Douglas W. Rose
State Bar No. 1084491
161 South First Street
Milwaukee, WI 53204
Phone:     (414)274-1400
Fax:       (414)274-1401

201215.076:2337341

2

3